The precise question for determination is: Can a workman who has secured a compensation award for the complete loss of sight in an eye, under the schedule in Section 1465-80, General Code, rightfully demand the immediate weekly payment of such award, when, under the provisions of Section 1465-79, General Code, he has been awarded and is receiving compensation representing two-thirds of his average weekly wages, for temporary total disability due to a back injury sustained in another later accident, while working for the same employer?
An answer to this question depends upon a consideration of certain provisions of the Ohio Workmen's Compensation Law, construed as liberally as may be in favor of the workman.
The general rule appears to be that where a workman suffers two or more specific injuries in his employment, for each of which he is entitled to a compensation award, such awards are not payable concurrently, but consecutively, when the maximum weekly amount allowed under the particular compensation act would be exceeded by concurrent payments. 71 Corpus Juris, 837, Section 550; 99 A. L. R., annotation beginning at page 896. Compare, 88 A. L. R., annotation beginning at page 385, and 96 A. L. R., annotation beginning at page 1080.
Most of the cases supporting the above rule involved one accident in which there were at least two distinct compensable injuries. There are cases, though, in which the rule was applied where there were separate injuries occurring in different accidents. O'Brien v. Albrecht Co., 206 Mich. 101,172 N.W. 601, *Page 124 
6 A. L. R., 1257; Nelson v. Service Oil Co., 121 Neb. 762, 238 N.W. 525;Ingram v. W. J. Rainey, Inc., 127 Pa. Sup., 481, 193 A. 335. But it is important to remember that all of these cases were decided under compensation acts peculiar to the jurisdictions where the decisions were rendered.
The basic theory of nearly every compensation act, including our own, is that the amount of compensation to be awarded for a disability is to be measured by the extent of the impairment of the claimant's earning capacity caused by the injury. Such theory is exemplified in Section 1465-79, the first part of Section 1465-80 and in Section 1465-81, General Code, relating to compensation awards for temporary total disability, partial disability, and permanent total disability, respectively.
A notable exception is presented by the latter part of Section 1465-80, General Code, with the schedule attached thereto. Such section reads:
"In case of injury resulting in partial disability, the employee shall receive sixty-six and two-thirds per cent of the impairment of his earning capacity during the continuance thereof, not to exceed a maximum of eighteen dollars and seventy-five cents per week, nor a greater sum in the aggregate than four thousand dollars, and such compensation shall be in addition to the compensation allowed to the claimant for the period of temporary total disability resulting from such injury. In cases included in the following schedule, the disability in each case shall be deemed to continue for the period specified and the compensation so paid for such injury shall be as specified herein, and shall be in addition to the compensation allowed to the claimant for the period of temporary total disability resulting from such injury, to wit:
"* * * For the loss of the sight of an eye, 66 2/3 per cent of the average weekly wages during one hundred twenty-five weeks." (Italics ours.) *Page 125 
The part of the quoted section with which we are presently concerned, as then in force, found interpretation in the case of State, ex rel. Schindler, v. Industrial Commission, 126 Ohio St. 34, 183 N.E. 871, where it is stated in the latter part of the opinion:
"By the terms of the schedule in Section 1465-80, covering loss of members, the commission has no discretion. The loss of an eye * * * entitled the claimant absolutely and at all events to the amount of compensation therein provided, * * *.
"For loss of member the award has no relation to the 'impairment of his earning capacity during the continuance thereof,' but, on the contrary, is arbitrarily fixed by the statute, as indicated by the following language:
" 'In cases included in the following schedule, the disability in each case shall be deemed to continue for the period specified and the compensation so paid for such injury shall be as specified herein, and shall be in addition to the compensation allowed to the claimant for the period of temporary total disability resulting from such injury.' " (Italics ours.)
We thus see that compensation for loss of the sight of an eye is arbitrarily fixed, and has nothing whatever to do with impairment of earning capacity. It is quite possible, as demonstrated by the instant case, that a workman might lose the sight in one of his eyes due to an accidental injury and not lose one day's work or be reduced in wages. But that would not prevent him from successfully claiming an award under the schedule in Section 1465-80, General Code.
Here, the relator lost his eyesight as a result of an industrial accident and has been allowed an award therefor under the schedule in Section 1465-80, General Code. Later, in another accident, he suffered a back injury, for which he was granted and is receiving compensation on the basis of temporary total disability under Section 1465-79, General Code. The two *Page 126 
injuries are wholly unrelated in time, in character and in effect. One represents the loss of a member for which the amount of compensation is arbitrarily prescribed by statute, independently of any impairment of earning capacity; the other is based altogether on total temporary loss of earning capacity, for which compensation is being paid under the provisions of another statute.
If the relator while working for one employer had sustained an accidental injury resulting in the destruction of sight in one of his eyes, and had been awarded and was receiving the scheduled compensation therefor, and while working for another employer had received a back injury causing temporary total disability for which compensation was also awarded, it would be neither just nor proper to allow either award to conflict with or affect the other. There is no difference in principle between a case of that kind and the present one.
We are not now called upon to determine what should be done in a case where as the result of the same accident a workman lost both an eye and a finger, for instance. In such a situation, involving one accident, the Industrial Commission might properly order payment of the awards consecutively and following any period of temporary total disability for which compensation had been allowed. At least that would seem to be in keeping with the spirit and purpose of the compensation act.
Maintaining the integrity and solvency of the State Insurance Fund ought to be a matter of vital concern to both employer and employee. Such fund should be collected and distributed in such a way as to fulfill the beneficient and salutary objectives underlying its creation. Certainly the compensation act was not designed to operate as a source of profit to the employee, or as a means to penalize the employer for accidental injuries occurring through no fault of his. Its main *Page 127 
purpose was to supplant an unsatisfactory and burdensome system with one which would make an award to a workman for disabilities occasioned by accidental, physical injuries arising out of and in the course of his employment, to compensate him in a measure for the loss sustained.
Counsel are agreed that the ruling of the court on the demurrer to the answer will be dispositive of the case. Under the peculiar circumstances of the instant case, it is our conclusion that the answer does not state a valid defense. The demurrer is therefore sustained and a writ will be issued as prayed for in the petition.
Demurrer to answer sustained and writ allowed.
WEYGANDT, C.J., DAY, WILLIAMS, MYERS, MATTHIAS and HART, JJ., concur.