FLEISCHMAN, APPELLEE, *v.* FLOWERS, ADMR., BUREAU OF
WORKMEN'S COMPENSATION, APPELLANT, ET AL.

(No. 69-615—Decided February 24, 1971.)

*Messrs. Griff, Weiner, & Orkin, Mr. Louis H. Orkin* and *Mr. Ed. Weiner*, for appellee.

*Mr. Paul W. Brown*, attorney general, *Mr. James Maurer* and *Mr. Robert J. Dodd, Jr.*, for appellant.

Leach, J. The single question presented herein is whether the General Assembly may constitutionally limit the eligibility for filing an application for compensation for permanent partial disability to persons who, prior to making application for determination of the extent of such disability (1) had been awarded temporary total compensation or (2) would have received temporary total compensation had their employer not paid their wages during their period of total inability to work, or (3) had been awarded partial compensation for impairment of earning capacity, such eligibility requirements applying regardless of the extent of the applicant's permanent partial disability resulting from a compensable injury.

Prior to 1941, the law did not provide for payment of compensation on the basis of a "percentage of the employee's permanent disability." Provision was made for payment of compensation only for (1) temporary total disability, (2) partial disability resulting in impairment of "earning capacity," (3) a "schedule" of compensation payable for specifically enumerated loss of members of the body or certain enumerated loss of body functions (e. g., loss of sight), and (4) permanent total disability.

Prior to 1941, all awards of partial compensation (customarily referred to as temporary partial compensation) were predicated not merely on the existence of physical disability, but upon a showing that such physical disability had resulted in "impairment of earning capacity." In 1941, G. C. 1465-80 (now R. C. 4123.57) was amended to authorize payment of a new type of compensation for partial disability, now referred to as permanent partial compensation (119 Ohio Laws 565, 569). Such compensation was authorized based on "the determination of the percentage of his permanent partial disability resulting from the injury." To insure the relative permanency of the disability at the time of such determination, the law provided for the filing of an application, not earlier than 40 weeks nor later than 52 weeks, after the date of the termination of the first period of temporary total disability

or from the date of the injury in the absence of temporary total disability. A single award of compensation was provided for, computed by applying the "percentage" of "permanent partial disability" to a specified number of weeks (representing in theory total disability), such award payable weekly at the maximum rate based on the employee's average weekly wage, until the full payment of such award had been made.

While the law as to permanent partial compensation has been the subject of numerous legislative amendments since 1941, the basic nature of this type of compensation has not been changed. Essentially, as observed by this court in *State, ex rel. Latino,* v. *Indus. Comm.* (1968), 13 Ohio St. 2d 103, permanent partial compensation under paragraph (B), like that provided for under paragraph (C) (loss of a member of the body), is an exception to the general rule that sections of the Ohio Workmen's Compensation Law "are aimed exclusively at compensating for impairment of earning capacity," and bears a closer resemblance to damages than it does to compensation for loss of employment. See, also, Young, Workmen's Compensation Law of Ohio, Section 7.22, quoted with approval in *Latino.* For an analysis of the nature of the payment under R. C. 4123.57 (C), see *State, ex rel. Dudley,* v. *Indus. Comm.* (1939), 135 Ohio St. 121.

From a review of the legislative history of R. C. 4123.-57, it appears that from 1941 to 1963 all persons entitled by reason of their disability resulting from a compensable injury to an award of permanent partial compensation were treated equally, without reference to eligibility for payment of some other type of compensation.

In 1963, R. C. 4123.57 was amended to provide, *inter alia,* that:

"An employee is eligible to file an application with the Industrial Commission for the determination of the percentage of his permanent partial disability resulting from the injury or occupational disease if he:

"(1) Has received compensation for temporary total disability; or

"(2) Would have been eligible for compensation for temporary total disability had the employer not paid him wages during the period of disability; or

"(3) Has received compensation for partial disability under division (A) of this section [payment based on impairment of earning capacity]." (130 Ohio Laws 926, 1466.)

Appellant asserts, in effect, that the right of the General Assembly to determine "the terms and conditions upon which payment shall be made" under Section 35, Article II of the Ohio Constitution, is "not modified or restricted by any other provision of the Constitution," and thus that there is no constitutional limitation on the power of the General Assembly to either include or exclude a group of persons from the right to receive compensation. Appellant relies for this assertion on statements by this court in *State, ex rel. Yaple,* v. *Creamer* (1912), 85 Ohio St. 349; *Indus. Comm.* v. *Kamrath* (1928), 118 Ohio St. 1; *Bozzelli* v. *Indus. Comm.* (1930), 122 Ohio St. 201; and *State, ex rel. Boswell,* v. *Indus. Comm.* (1932), 125 Ohio St. 341.

It is true that those earlier cases do contain general language to such effect. However, if by the employment of such language, the court in those cases intended to hold that fundamental constitutional concepts, such as "equal protection" of the laws and "due process," were totally inapplicable to workmen's compensation legislation, such a conclusion, in effect, has since been rejected.

While upholding the power of the General Assembly to classify cases as to exposure to silica dust on the basis of the length of the time of the exposure, this court, in *State, ex rel. Lourin,* v. *Indus. Comm.* (1941), 138 Ohio St. 618, recognized that even workmen's compensation legislation, if "arbitrary or unreasonable," could be violative of Section 26 of Article II of the Ohio Constitution. or Section 1 of the Fourteenth Amendment to the United States Constitution. In essence, *Lourin* stands for the proposition that the power of the General Assembly in such respect, while broad, is not limitless.

Any doubt in such respect has been removed by the decision of this court in *Emmons* v. *Keller* (1970), 21

Ohio St. 2d 48. In that case, this court specifically held a portion of the first paragraph of R. C. 4123.59 to be unconstitutional upon the basis that its application would lead to arbitrary or capricious results, and thus result in a denial of equal protection of the laws to applicants for death benefits.

Then, having stricken a portion of the first paragraph of R. C 4123.59, this court, in the second paragraph of the syllabus concluded that "the remaining part of that statutory paragraph will not lead to arbitrary or capricious results or result in any denial of equal protection of the laws."

This court concluded further, as set forth in paragraph three of the syllabus:

"One part of a statute may be invalid for want of conformity to the Constitution without affecting the validity of the remainder of the statute, where the invalid part may be stricken and is not in its nature and connection so essential to the remainder of the statute or so related to the general purpose of its enactment as to warrant the conclusion that the General Assembly would have refused to adopt the statute with the invalid part thereof stricken therefrom."

Applying the principles employed in *Emmons* v. *Keller* to the instant case, we see no constitutional inhibition against limiting eligibility for compensation under paragraph (B) of R. C. 4123.57 to persons who have already qualified for compensation under paragraph (A). Both paragraphs (A) and (B) involve payment of compensation for partial disability, with an option on the part of the employee after the passage of a certain span of time, to receive one or the other. Thus, a legislative determination that payment for permanent partial compensation under paragraph (B) should only be made where an employee had already established that his physical disability was of a type and of sufficient degree to cause an "impairment of earning capacity," if considered separately, would not be arbitrary or capricious. In this connection, it

might also be noted that an "impairment in earning *capacity*" does not necessarily require proof of reduced *income*. *Indus. Comm.* v. *Royer* (1930), 122 Ohio St. 271.

A different question is presented, however, as to the alternative requirement that the injured employee, suffering from a permanent disability as the result of a compensable injury, and thus being otherwise qualified for payment of permanent partial compensation, must have received, at some prior time, temporary total compensation or have been absent from his employment at least eight days at some prior time so as to entitle him to such payment if his employer had not paid his wages. See R. C. 4123.55.

The happenstance of such absence from employment at some prior time has no logical relationship to the question of the extent of claimant's present permanent partial disability, or any relationship to the original injury. It does not establish minimum limits as to the degree of disability necessary for payment. It is not akin to a statute of limitations. Any person who, by the nature of his employment, is able to return to at least some work within seven days is precluded from even having his application *considered,* although the extent or degree of his permanent partial disability may be far in excess of that suffered by another employee who happened to be totally absent from employment for more than one week, and even though there be no question as to the relationship of the disability to the injury.

In *Emmons* v. *Keller, supra* (21 Ohio St. 2d 48, 51), Chief Justice Taft stated:

"It is possible to imagine instances where division (2) of the foregoing quoted portion of the 1963 amendment to Section 4123.59, Revised Code, could enable a jury to allow a death claim that was far less meritorious than one that could not even be submitted to a jury under the working of that division (2).

"For example, an injured employee earning $100 per week might be seriously enough injured (75% impairment

of earning capacity), so as to receive, under Section 4123.-57 (A), Revised Code, the limit of $10,000 for partial disability within less than four years. If he died five years after his injury, Section 4123.59, Revised Code, would prevent any claim on account of his death, even though there was a definite proximate causal relationship between his injury and his death. On the other hand, an employee earning the same amount might be much less seriously injured so that he would have only a 10% impairment of earning capacity. He could receive compensation for partial disability under Section 4123.57 (A) for approximately 29 years before receiving the $10,000 limitation for partial disability. Thus, under Section 4123.59, Revised Code, a claim for his death could be maintained for approximately 29 years after his injury.''

By analogous reasoning, we conclude that the General Assembly may not constitutionally impose, as conditions for eligibility for the filing of an application for the determination of the percentage of permanent partial disability, requirements that such an applicant has received compensation for temporary total disability or would have been eligible for such had the employer not paid him wages during the period of total disability.

Having so concluded, the question necessarily is presented as to whether we should merely strike the references in R. C. 4123.57, under the 1963 amendment, to temporary total disability as a condition for eligibility, but retain the alternative requirment as to payment of partial disability based on impairment of earning capacity.

As stated in paragraph three of the syllabus of *Emmons* v. *Keller* the test to be applied is whether the part so stricken ''is not in its nature and connection so essential to the remainder of the statute or so related to the general purpose of its enactment as to warrant the conclusion that the General Assembly would have refused to adopt the statute with the invalid part thereof stricken therefrom.''

In our opinion, to apply the requirement of payment

of partial compensation on a wage impairment basis, while striking the other language as to eligibility, would be to depart completely from the apparent legislative scheme and result in a statutory amendment of a type not contemplated by the General Assembly. The 1963 amendment, as adopted, did not limit the payment of permanent partial compensation to cases where the disability was of such a type and to such a degree as to result in an impairment of earning capacity. While the other legislative requirements as to eligibility adopted at that time are here held to be unconstitutional, we do not conclude thereby that the balance of the eligibility provisions in question would have been adopted where, if applied to every case, such would result in a basic change in the very nature of such compensation. See *State, ex rel. Latino, v. Indus. Comm., supra* (13 Ohio St. 2d 103).

We therefore conclude that the provision of R. C. 4123.57, as amended effective October 1, 1963 (130 Ohio Laws 926), limiting eligibility to file an application for the determination of the percentage of permanent partial disability under paragraph (B) thereof to persons who (1) have received compensation for temporary total disability; or (2) would have been eligible for compensation for temporary total disability had the employer not paid such person wages during the period of disability; or (3) have received compensation for partial disability based on impairment in earning capacity, leads to arbitrary and capricious results and thus is unconstitutional as being in conflict with the "equal protection" requirements of Section 26 of Article II of the Ohio Constitution.

For the foregoing reasons, the judgment of the Court of Appeals, which sustained the judgment of the Common Pleas Court in favor of plaintiff-appellee, is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., Schneider, Herbert, Duncan, Corrigan and STERN, JJ., concur.