WINROD ET AL. *v.* SOMMER, ADMR., BUREAU OF WORKMEN'S COMPENSATION.

(No. 12262—Decided September 7, 1972.)

Court of Common Pleas of Carroll County.

*Mr. Leander Zwick,* for plaintiff.
*Mr. David Sapphire,* for defendant.

PERKINS, J.   The defendant Joseph J. Sommer as administrator of the Bureau of Workmen's Compensation has moved for a summary judgment.   The court construes this to be a motion to dismiss the petition under Rule 12, Paragraph B—Paragraph 6 that the petition fails to state a claim upon which relief can be granted.

Briefly, the defendant says that he is without jurisdiction to consider the death claim of Bertha Winrod, and the court also has no jurisdiction because the claim does not comply with R. C. 4123.59.

The court has heard arguments of counsel, testimony, and has admitted into evidence Workmen's Compensation file 2274475 of the plaintiff's decedent Merton C. Winrod only to assist the court in deciding this motion.

The facts are as follows:

1. Bertha Winrod was until his death the wife of Merton Winrod, who died May 4, 1970.

2. On May 8, 1961, Merton Winrod was injured while working for the Minerva Wax Paper Company, a complying employer. The nature of the injury is not important to the decision of this motion.

3. The petition claims, and an opinion in the file of a physician of the decedent, also claims, that the injury caused death. Whether or not that fact can be proved eventually, it is a fact assumed for the purposes of this motion, since the motion is in the nature of a demurrer.

4. Merton Winrod received continuous payments for disability on account of his injury from the date of injury until the date of death.

5. Merton Winrod received Workmen's Compensation payments for temporary total disability between 5-8-61 and 3-10-68. He then received payments for temporary partial disability between 3-10-68 and the date of his death. He was not represented by counsel during his life. On 4-16-69 he was found to have a 50% permanent partial disability (but not as to all of claimed injury).

R. C. 4123.59 in its present form as to the question presented was enacted 10-1-61, this being one of thirteen versions of this much tinkered with statute. It sets forth the requirements for filing a death claim and the benefits.

It first requires that there be shown an injury which causes death.

It then sets forth two time limitations. One is that death ensue within a period of three years after injury. The second requirement is that:

"* * * compensation for total disability or partial disability as provided in division A of R. C. 4123.57 on account of the injury * * * which caused his death has been paid for any portion of the year next preceding the date of death of such employee."

There is a third provision not involved here.

In this case Merton Winrod was receiving compensation for partial disability the entire year before his death.

Therefore, if we consider the statute as stated above, the plaintiff clearly has a right to file a death claim. However, in the case of *Emmons* v. *Keller*, 21 Ohio St. 2d 48, discussed in the next section, the law was, in effect, changed or amended.

In *Emmons* a dependent filed an appeal in the Common Pleas Court from a decision of the Industrial Commission denying a death benefit claim under R. C. 4123.59. Injury was on January 9, 1962. Death occurred July 7, 1969. In the Common Pleas Court the administrator demurred and the demurrer was overruled. Judgment was then rendered for the plaintiff and the decision was appealed by the administrator. The Court of Appeals affirmed the judgment of the Common Pleas Court. The Supreme Court reversed the Court of Appeals' decision. In the facts of the *Emmons* case no compensation of any kind was paid the plaintiff's decedent in the year before death and no application for compensation was ever made.

The plaintiff raised the constitutional question pertaining to the second requirement of R. C. 4123.59 and claimed that because of the unconstitutionality thereof that the statute as it had existed before the change was the appropriate statute and that under the former statute *Emmons* had a right of action for a death claim.

The Supreme Court of Ohio determined that the part of the statute under consideration could lead to arbitrary results. The majority opinion *imagined* an example where a claimant at $100 a week might have 75% impairment so as to receive the maximum of $10,000 under division (A) of R. C. 4123.57 in less than 4 years. This, the court reasoned, is a more meritorious claim than one less injured. However, if his death occurs in five years he could not have a death claim. Yet one less seriously injured could have a death claim with 10% impairment and stretch the death claim limitation to 29 years.

Therefore, the inequality existed in the "imagined" case between those receiving total and partial disability in the year before death.

The court then applied its reasoning in the "imagined

case" by declaring unconstitutional the words "or partial disability as provided in division (A) of Section 4123.57 of the Revised Code." But it held the balance of the statute valid. The court assumed that it had now purified the statute of inequality and declared the balance valid.

The attorney general for the defendant asserts that under R. C. 4123.59 after *Emmons* the failure of the decedent to receive total disability in the year before death is fatal to the claim of the widow in this case. The defendant therefore claims that by virtue of *Emmons*, R. C. 4123.59 is now a constitutional statute and no further constitutional question is involved.

The plaintiff, however, claims that R. C. 4123.59 as to the plaintiff is unconstitutional.

(1) As denying the complainant due process under the Ohio Constitution, Article I, Section 16, and under the United States Constitution, Fourteenth Amendment;

(2) As denying the claimant equal protection of the laws under the Fourteenth Amendment of the United States Constitution; and

(3) As being a statute not of uniform operation under Article II, Section 26 of the Ohio Constitution.

Before *Emmons* the inequality found by the court lay between those receiving total and those receiving partial disability payments.

As to the facts in the case then before the Supreme Court of Ohio perhaps there was no inequality left when in effect the Supreme Court amended the statute by leaving only the words "total disability" in the first paragraph of R. C. 4123.59.

But by its very decision the Supreme Court in *Emmons* created a new classification—those receiving total disability and those not receiving total disability. So in the opinion of this court, we are faced with a new statute and a new set of facts not contemplated in *Emmons*. Since the plaintiff has raised the constitutional question of equal protection of the laws, it is clear to this court that a new classification was made by the Supreme Court requiring the attention of this court as to the constitutionality or equality of the newly created classification.

The Supreme Court found the classification in the statute (that those receiving total and those receiving partial disability) to be unconstitutional under Section 26, Art. II of the Ohio Constitution (uniformity of operation) and Section I of the Fourteenth Amendment of the United States Constitution (equal protection of the laws) because the court found the classification had arbitrary and capricious results.

So, therefore, the first logical step in determining the constitutional question posed is to discuss the new classification itself. It could be argued (but not persuasively) that in striking out the words partial disability the court did away with all classification under Section II. But this court is of the opinion that clearly a new classification was created. In fact the classification opposed to those receiving total disability is now divided into two, those receiving partial disability and those receiving no disability at all in the year before death.

Therefore, in order to determine whether the court in *Emmons* did cure the unconstitutional inequality, this court must determine the reasonableness of the classification that I have described above.

It is clear that the legislature can classify the subjects of its legislation.

"The legislative power of classification is limited only by the Constitution and the judicial constructions thereunder. It is manifestly impossible to maintain an absolute universality of operation, and it is inevitable that due regard must be paid to capabilities, conditions, and relations between men and physical forces. The Courts have uniformly approved classification, and the only difficulty has been to determine the limits thereof. These limits have never been defined and each case must, in large measure, be decided upon its own peculiar facts, circumstances, and conditions.

"The classification must have a valid basis. The classification must be reasonable and not arbitrary, artificial, or evasive. There must be a real and substantial distinction in the nature of the class or classes upon which the law operates. *The classification must rest upon some ground*

*of difference having a fair and substantial relation to the object of the legislation."* (Emphasis added.) (Ohio Jurisprudence 2d Vol. II, Par. 672.)

Also see *State, ex rel. Lourin,* v. *Industrial Commission,* 138 Ohio St. 618, holding that a separate classification of silicosis and subclassifications of silicosis claimants to be uniform and equal.

What then was the purpose of the Workmen's Compensation laws—simply to provide compensation for injury and death caused by injury incurred in the course of employment. These laws were all enacted pursuant to a constitutional provision Art. II, Section 35 which provided in part as follows:

"For the purpose of providing compensation to workmen and their dependents for death, injury, or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund * * *. Such compensation shall be in lieu of all other rights to compensation or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, * * *."

Clearly the main purpose in the death benefit statute, enacted pursuant to the Constitution of Ohio, is to provide compensation to dependents when the injury caused death. Three elements of a valid claim are (1) injury in the course of employment, (2) injury as the cause of death, and (3) a dependent. In a moment I will add a fourth element.

In the case at bar all three of the first elements are present. Not present is a statutory requirement that the decedent must have received total disability during some part of the year before death whereas he only received partial disability.

Therefore, R. C. 4123.59 as it exists after *Emmons* sets up a time limit and this is the fourth element. This limit is an absolute three years after injury for those on partial disability. The limit on those receiving total disability is three years plus an infinite number of years after injury. Is this different classification justified?

Several disturbing questions arise. Assuming the main purpose of the statute is to provide compensation to dependents where the injury causes death, cannot an injury result in partial disability and still be the cause of death? The court thinks it can. Second, does the mere fact of total disability as contrasted to partial disability standing alone have anything substantial to do with the question as to whether the injury causes death? The answer is no, and is more clear when put as follows: Would a trial court be justified in submitting a death claim to a jury where the *only* evidence as to the cause of death was the fact that the decedent was receiving total disability before death? The court thinks the answer to this last question would clearly be no, and that the mere fact of total disability does not go to prove injury as the cause of death. In the court's opinion there is no real or substantial connection between the fact of total disability and injury as the cause of death. And in the opinion of the court the Supreme Court in *Emmons* created a more substantial inequality as to this plaintiff than that which it sought originally to avoid in the case then before it.

The defendant Sommers through the Attorney General cites *Fleischman* v. *Flowers, Admr.*, 25 Ohio St. 2d 131, in support of its contention in this matter. The *Fleischman* case did not involve R. C. 4123.59 but involved R. C. 4123.57(B) and it limited eligibility to file an application to determine percentage of permanent partial disability under paragraph (B) to certain situations.

In *Fleischman* the Common Pleas Court had found the amendment to R. C. 4123.57(B) unequal and unconstitutional and *ordered the Industrial Commission to determine the extent of the plaintiff's permanent partial disability without regard to said provisions.* The Court of Appeals affirmed the Common Pleas Court, and the Supreme Court affirmed the Court of Appeals in a decision written by Judge Leach.

In exactly what way was the *Emmons* case cited in *Fleischman*? Only in the following way. The claim had been made by the Industrial Commission that the Workmen's Compensation constitutional provision Section 35,

Art. II of the Ohio Constitution could not be modified or restricted by any other provision of the Constitution. Therefore, reasoned the Industrial Commission, the uniform operations provision of the Ohio Constitution, Section 26, Art. II, could not be used as a constitutional limitation to Section 35, Art. II. The Supreme Court said with respect to *Emmons* as follows:

"Any doubt in such respect has been removed by the decision of this court in *Emmons* v. *Keller* (1970), 21 Ohio St. 2d 48."

But then Judge Leach addressed himself to the payment provisions of R. C. 4123.57(B) in the following language:

"A different question is presented, however, as to the alternative requirement that the injured employee, suffering a permanent disability as a result of a compensable injury, and thus being otherwise qualified for payment of permanent partial compensation, must have received at some prior time, temporary total compensation or have been absent from his employment at least eight days at some prior time so as to entitle him to such payment * * *."

"*The happenstance of such absence from employment at some prior time has no logical relationship to the question of the extent of claimant's present permanent partial disability or any relationship to the original injury.*"

This court could almost paraphrase Judge Leach's italicized words above in this case to read:

"The happenstance of the decedent's total or partial disability at some time prior has no logical relationship to the question of the claimant's death benefit or any relationship to the original injury."

And so the *Fleischman* case reasoning fortifies this court in its conclusion that the twisted remains of R. C. 4123.59 after *Emmons* as to this claimant sets up a classification which has no logical relationship in showing or establishing that the injury was or was not the cause of death. Rather the classification (that is between those receiving total and those not receiving total disability in the year before death) is a totally arbitrary classification.

A death claimant who can prove that the injury to the

decedent caused death, whose decedent received total disability in some part of the year before death has a time limit of three years plus an infinite number of years. On the other hand a death claimant who can also prove that the injury caused death, and whose decedent received only partial disability in the year before death, has a time limit of only three years. The different requirement as to the time of filing therefore is manifestly arbitrary, unequal, and therefore unconstitutional.

This court has, therefore, concluded that R. C. 4123.59 after *Emmons* and as to this complainant is unconstitutional as denying the complainant equal protection of laws under the Fourteenth Amendment of the United States Constitution and as being not of uniform operation under Art. II, Section 26 of the Ohio Constitution.

The defendant refused to hear this case on its merits. That alone would not constitute failure of due process.

However, the Commission's own Dr. Frame determined the percentage of disability to be 50% *without considering the heart involvement.* He then recommended that a cardiac specialist examine the decedent to determine what part of his disability was attributed to the heart condition. (EX A-1.)

The defendant ignored this suggestion but made an order on 4/16/69 (without regard to the heart condition) that the decedent had 50% disability. That order after *Emmons*, announced in 1970, is now supposed to be a complete bar to the claim of the widow, since it relegates the decedent to partial disability.

A sloppy bureaucratic decision is supposed to become a complete bar to an important substantive right. Not so. Failure of the defendant to determine the disability with reference to the heart condition, as suggested by its own physician, was in itself a denial of due process under the Workmen's Compensation Law.

So, this court has also concluded that the complainant has been denied due process under the Ohio Constitution, Art. I, Section 16 and under the United States Constitution, Fourteenth Amendment, and under the statutes of Ohio.

This court has now held R. C. 4123.59 unconstitutional

as to this complainant. The defendant argues that the only law that can govern is the law in effect at the time of death. That is the law which the court has now held to be unconstitutional.

To support his contention the Attorney General has cited *Industrial Commission* v. *Kamarth*, 118 Ohio St. 1, decided January 11, 1928, which provides as follows:

"1. The rights of injured employees and the dependents of killed employees to participate in the state insurance fund are such, and such only as are conferred by statutory law.

"* * *

"3. The cause of action of an injured employee accrues at the time he receives an injury in the course of his employment.

"4. The cause of action of a dependent of a killed employee accrues at the time the employee dies from an injury received in the course of his employment."

The defendant thereby reasons from this case that the plaintiff having no cause of action before the date of death May 4, 1970, has no rights of any kind which can be protected in a court of law since the announcement of *Emmons*, January 4, 1970.

But what is the cause of action? It means first that the complainant has a right that can be protected in court, and second that the complainant has a right to commence suit. The right to commence suit in this case does not begin until the death of the injured workman.

But does this mean that no rights of any kind existed before the date of death? The court thinks not. Some kind of right goes to the dependent of a deceased workman from the time of injury.

In *Fisher* v. *Ohio Malleable Iron Company* (1933), 127 Ohio St. 321, at 324, we find the following language:

"* * * Manifestly the dependent cannot sue until the employee has died because *the right of the dependent, while it has its source in the injury*, does not arise until the injury results in death. This fact makes inevitable the decision in the *Kamrath* case. But this is by no means equivalent to

holding that liability for the death caused by the injury dates from the time of the death only. The Ohio statutes make the injury the source of the action both for the employee and for his dependents in case of death. The Workmen's Compensation Act repeatedly contemplates a situation such as this, where death arises from an injury. Thus in Section 1465-72 General Code (now R. C. 4123.46), the statute speaks of payment to the employee 'wheresoever such injuries have occurred, * * * or to their dependents in case death has ensued.' *The right of the dependent does have its source in the injury which causes the death even though it does not accrue until the time of the death.*"

After *Fisher* the Supreme Court can now be found because of the case below apparently on both sides of the question.

In *State, ex rel. Efford,* v. *Industrial Commission* (1949), 151 Ohio St. 109, the Supreme Court held in a silicosis case that the *statute of limitations in effect at the time of the injury* and not in effect at the time of death was the controlling statute. The last injurious exposure happened during a time when the two-year statute of limitations was in effect. Death occurred while an eight-year statute of limitations was in effect. *Therefore, the court had to hold that the rights of the dependent were fixed as of the time of the injury.* The Supreme Court in the *Efford* case distinguished the *Kamrath* case by saying that *Kamrath* was not an occuptional disease case.

Later in *State, ex rel. Jones-Laughlin Steel Corp.* v. *Dickerson* (1953), 160 Ohio St. 223, 52 O. O. 86, the Supreme Court decided that as far as the amount of compensation was concerned, the right of the dependent depended on the statutory law in force at the date of death. In the *Dickerson* case a dissenting opinion pointed out that the result in *Dickerson* was an about face to the result in *Efford.*

These apparently contradictory opinions can be reconciled on the following basis. A substantive right is governed by the law in effect at the time of injury. When the law only has to do with the amount of compensation it

is governed by the law in effect at the time of death. The question in the present case is whether the complainant has a substantive right to file a death claim at all. The case before this court at the moment more nearly fits the law announced in *Efford* than the law announced in *Dickerson*, because it deals with the substantive right and not with the amount of damages or compensation. The statute, R. C. 4123.59 actually sets up a statute of limitations which operates unequally. A statute of limitations is a part of the substantive right because it deals with its duration.

Furthermore this interpretation (that is that there is a right of the dependant arising at the time of injury even though no suit may be filed until after death) more nearly fits the purposes of the Workmen's Compensation constitutional provision (Art. II, Section 35) than does any other interpretation.

The purpose of the Workmen's Compensation constitutional amendment was to provide a simple and sure method of compensating injured workmen and providing for benefits to their dependents at death. The constitutional amendment then took away from all injured workmen or their dependents at death any common-law action for damage. These rights were to be so simple that the services of lawyers would not be really required to claim them.

The Constitution said statutes were to be enacted to carry out these purposes. In this connection, R. C. 4123.52 makes it clear as pointed out in the above quotation from *Fisher* v. *Ohio Malleable Iron Company* that the Ohio statutes make the injury the source of action both of the employee and of his dependents in case of death.

But what has happened? The Workmen's Compensation Law has become a technical maze of practices and terms understood only by a specialized priesthood using a jargon hardly intelligible to even an intelligent layman.

Death benefit rights are made to depend on bureaucratic decisions during the life of the decedent which have nothing necessarily to do with whether the injury caused death..

So, therefore, it is clear to this court that during the

lifetime of the decedent he was denied due process by the defendant in determining whether or not he was partially or permanently disabled.

It is true that the details of Workmen's Compensation rights must be established by statute. It is not true that the only rights Workmen's Compensation claimants have are statutory rights. Behind the statutory rights lays a larger right to compensation assured by Art. II, Section 35 of the Ohio Constitution and the constitutional principles of equal protection of laws, uniformity of laws, and due process both under the Ohio and United States Constitutions. The statutory rights must meet these constitutional provisions.

Therefore, the court has no difficulty in deciding on one or two grounds (either being sufficient) that the complainant has the right to have filed its complaint for death benefits in this court. The first ground, is that since the court has held unconstitutional the classification set up in R. C. 4123.59 after *Emmons*, the complainant has the right of action if she can prove that the injury to her decedent caused his death, regardless of any other provisions of R. C. 4123.59.

The other ground is that law in effect at the time of injury is the applicable law. That law was amended effective November 2, 1959, in 128 Ohio Laws 743. The first paragraph of that law provides as follows:

"In case an injury to an employee causes his death and if (1) his death ensues within a period of two years after injury or, (2) compensation or disability on account of the injury has been continuous from the date of the injury at the time of the death of the injured employee, benefits shall in the amounts allowed be granted."

It is clear that compensation in this case on account of the injury was continuously paid from the date of the injury to the date of death.

From what has been said it is clear that the court intends to overrule the motion for summary judgment which the court has already construed to be a motion to dismiss.

50

The court noted that in the *Fleischman* case the Common Pleas Court in considering R. C. 4123.57(B) ordered the Industrial Commission to determine the extent of the plaintiff's permanent partial disability without regard to said provisions. It would seem sensible for this court to remand the case to the Industrial Commission to consider on its merits. However, counsel for the defense has pointed out that in the *Fleischman* case the only agency for determining the matter on the merits in that case was the Industrial Commission and in this case this court can determine the merits through proper trial.

Therefore, although the court thinks the sensible way is to remand, the court will not do so but overrules the motion for summary judgment and orders this case to proceed to trial in this court.