DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, Sandra J. Moorehead, has filed this original action requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her request for payment of compensation accrued at the time of death of her decedent-husband, William Moorehead, for scheduled loss of use of both arms and legs, pursuant to R.C. 4123.57(B), and to enter a new order granting said compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In the decision, the magistrate concluded the commission abused its discretion in denying the requested compensation; however, the magistrate held that relief was inappropriate under State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. Accordingly, the magistrate recommended that this court issue a writ of mandamus directing the commission to vacate its order, review the submitted medical evidence, and determine whether relator met her burden of proving that decedent sustained the loss of use of both arms and legs as a result of the industrial injury.
 {¶ 3} Both relator and the commission have filed objections to the magistrate's conclusions of law. Relator argues that, instead of recommending that the case be returned to the commission for further consideration, the magistrate should have recommended that this court order the commission to grant the requested relief pursuant to Gay,
supra. The commission urges that the magistrate erred in finding that it abused its discretion in denying the requested compensation.
 {¶ 4} As indicated in the magistrate's findings of fact, at 12:02 p.m. on October 20, 1997, decedent fell approximately 16 feet off a scaffold lift and landed head first on the concrete pavement below the lift. Decedent was non-responsive following the fall; he died at 1:37 p.m. the same day without regaining consciousness.
 {¶ 5} After receiving death benefits, relator filed an "application for payment of compensation accrued at time of death," alleging that for the 95 minutes between the accident and decedent's death, decedent was a quadriplegic entitled to R.C. 4123.57(B) benefits for his loss of use of both arms and both legs. In support of her application, relator submitted the medical reports of three physicians who opined that, had decedent survived his injuries, he would have been a quadriplegic.
 {¶ 6} Scheduled awards pursuant to R.C. 4123.57(B) provide compensation for the "loss" of enumerated body parts. The Ohio Supreme Court originally defined a scheduled "loss" as loss by severance only and not the loss of use of such body parts. See State ex rel. Bohan v.Indus. Comm. (1946), 146 Ohio St. 618. However, in State ex rel. Gassmanv. Indus. Comm. (1975), 41 Ohio St.2d 64, a case involving a paraplegic, the court expanded the meaning of the term "loss" as used in R.C. 4123.58, which governs permanent total disability compensation, to include "loss of use" and not merely "loss by severance." The court reasoned that "[f]or all practical purposes, [the employee had] lost his legs to the same effect and extent as if they had been amputated or otherwise physically removed." Id. at 67. In a subsequent case also involving a paraplegic, State ex rel. Walker v. Indus. Comm. (1979), 58 Ohio St.2d 402, the court applied the holding of Gassman to R.C. 4123.57(C), now R.C.4123.57(B), and overruled Bohan.
 {¶ 7} R.C. 4123.57(B) benefits are akin to general damages and are awarded irrespective of earning capacity. State ex rel. Miller v. Indus.Comm., 97 Ohio St.3d 418, 2002-Ohio-6664, at ¶ 12. Such benefits are payable at a specified level for a stated number of weeks, depending upon the injury. State ex rel. Hammond v. Indus. Comm. (1980),64 Ohio St.2d 237, 239. An injured worker is entitled to compensation for 225 weeks for the loss of an arm and 200 weeks for the loss of a leg. R.C. 4123.57(B) further provides, in pertinent part, that "[w]hen an employee has sustained the loss of a member by severance, but no award has been made on account thereof prior to the employee's death, the administrator shall make an award in accordance with this division for the loss which shall be payable to the surviving spouse[.]"
 {¶ 8} In denying relator's application, the commission discussed the purpose of a scheduled loss of use award under R.C. 4123.57(B). The commission construed the statute as affording compensation to offset the handicap an injured worker might suffer due to the severance, or loss of use, of a body part. In other words, according to the commission, an R.C. 4123.57(B) award compensates an injured worker who survives an injury and must endure the loss of a body part on a daily basis. Based upon this interpretation of the statute, the commission determined that scheduled loss benefits may be awarded only when the injured worker experiences the physical suffering and hardship caused by the loss of a body part. Applying this rationale to the facts before it, the commission found that relator was not entitled to a scheduled loss award because decedent did not sustain an actual loss of use of his extremities, as decedent was comatose and, thus, completely unaware of the extent of injuries for the brief period between the time he sustained the injury and his death.
 {¶ 9} The commission further found that an award for loss of use requires an actual sustained loss of use. "A loss of use as contemplated by the statute requires an opportunity for use. Such a loss must be actually perceived and experienced by an injured worker. Such a loss has not occurred where it has not been demonstrated by an injured worker who is cognizant of the loss and is envisioned in the mind of a medical professional." Accordingly, the commission found that "a loss that may have occurred had an injured worker survived is not compensable [under] R.C. 4123.57(B)."
 {¶ 10} The commission concluded that the medical evidence submitted by relator did not establish that decedent sustained an actual loss of use. The commission noted that all three of the medical reports submitted by relator ultimately concluded that decedent would have been a quadriplegic had he survived the accident. "The fact of survival was an assumed fact critical to each opinion and to the actual loss of use."
 {¶ 11} The commission is vested with authority to determine all rights of claimants under the workers' compensation laws, and this authority includes interpreting statutes governing eligibility for benefits. "[I]t is well-settled that courts, when interpreting statutes, must give due deference to an administrative interpretation formulated by an agency which has accumulated substantial expertise, and to which the legislature has delegated the responsibility of implementing the legislative command." State ex rel. McLean v. Indus. Comm. (1986), 25 Ohio St.3d 90,95. Here, the commission exercised this authority in construing R.C.4123.57(B) to deny compensation for loss of use under circumstances where the injured worker never regains consciousness after the injury, dies shortly after the injury, and, thus, has no capacity to actually suffer a loss of use of the injured body parts. This court cannot conclude that the commission abused its discretion in so finding. It could not have been the intent of the General Assembly in promulgating R.C. 4123.57(B), or the intent of the Ohio Supreme Court in deciding Gassman and Walker,
to sanction an award of 850 weeks (more than 16 years) of workers' compensation benefits due to an alleged loss of use where the injured worker survived the industrial injury in an unconscious state for only a brief period and never actually experienced the disabling effects of quadriplegia.
 {¶ 12} Accordingly, we conclude that the commission did not abuse its discretion in denying relator a scheduled loss award under R.C. 4123.57(B). We specifically decline to substitute our judgment for that of the commission by defining a loss of use to include situations where the injured worker survives an industrial injury in an unconscious state for only a brief period and never actually experiences the disabling effects of the injury. Rather, we afford the administrative decision in this case the deference due it under Ohio law.
 {¶ 13} Following independent review pursuant to Civ.R. 53, we adopt the magistrate's findings of fact, but reject the magistrate's conclusions of law. Having found that the commission did not abuse its discretion in denying relator's request for scheduled loss benefits, we sustain the commission's objections and overrule relator's objections. Accordingly, the requested writ of mandamus is denied.
Relator's objections overruled; respondent Industrial Commission'sobjections sustained; writ denied.
Brown, P.J., concurs.
Lazarus, J., concurs in judgment only.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. :
Sandra J. Moorehead,
 :
 Relator,
 :
v. No. 04AP-404
 :
Industrial Commission of Ohio (REGULAR CALENDAR)
and P.F. Nolan Inc., :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on October 18, 2004 Law Office of M. Scott Kidd and M. Scott Kidd, for relator.
Jim Petro, Attorney General, and William J. McDonald, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 14} Relator, Sandra J. Moorehead, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's request for payment of compensation accrued at the time of the death of decedent, William Moorehead ("decedent"), for loss of use of both arms and legs pursuant to R.C. 4123.57(B), and that the commission be ordered to find that she is entitled to that award of compensation.
Findings of Fact:
 {¶ 15} 1. On October 20, 1997, decedent fell approximately 16 feet off a scaffold lift at approximately 12:02 p.m. Decedent landed head first on the concrete pavement below the lift.
 {¶ 16} 2. Decedent was non-responsive following the fall and was taken to University Hospital Bedford Medical Center. Decedent arrived at the hospital emergency room at 12:25 p.m., and was pronounced dead at 1:37 p.m.
 {¶ 17} 3. Relator, as decedent's widow, subsequently filed a death claim application with the Ohio Bureau of Workers' Compensation ("bureau"). The bureau granted relator's application, which was later affirmed throughout the commission's administrative process. As a result, medical bills and funeral expenses have been paid in this claim.
 {¶ 18} 4. On October 20, 1998, relator filed a motion requesting the payment of compensation accrued at the time of decedent's death pursuant to R.C. 4123.57(B) for decedent's loss of use of both arms and both legs. Relator asserted that, for the one and one-half hours between the time of the accident and decedent's time of death, he was rendered a quadraplegic as a result of the injuries sustained in the fall.
 {¶ 19} 5. The evidence submitted by relator includes the x-rays taken at the hospital which provide, relevant to the within matter, as follows: "severely comminuted skull fractures[;] dislocation of the skull from its normal articulation with the cervical spine[;] fracture of a spur of C5[; and] probable chronic compression wedging of C5." Relator also attached the December 13, 1998 medical report of Jeffrey J. Fierra, M.D., who, after reviewing the hospital records and autopsy report, opined as follows:
The history of the accident and the information in the medical records from the Bedford Medical Center and the autopsy report are compatible with obvious evidence of extensive trauma to the head, which was severe enough to produce significant contiguous trauma to the cervical spine, i.e., "Disassociation of the normal articulation between the skull and the 1st cervical segment with significant gaping", and the cervical spinal cord.
On the basis of the above, it is considered to be within reasonable medical certainty or probability that if Mr. Moorehead had survived these injuries, he would have residual or would have experienced complete or nearly complete permanent loss of the use of all of the extremities, i.e., he would have been quadriplegic.
 {¶ 20} 6. Relator also attached the May 2, 2002 medical report of Norman W. Lefkovitz, M.D., who opined as follows:
Please be aware that with good medical certainty and probability, had William survived this severe head trauma and rib fractures with hemothorax, he would have been left quadriplegic as a result of the upper cervical spine dislocation. Should you have any further questions con-cerning his medical review, please feel free to contact our office.
 {¶ 21} 7. Relator also attached the February 11, 2003 report of Barry J. Greenburg, M.D., who opined as follows:
The purpose of my review was to provide medical evidence as to whether or not this injury rendered Mr. Moorehead a quadriplegic. It is my opinion, within reasonable medical certainty and probability, based upon my experience as an Orthopaedic Spine Surgeon, the vast amount of Orthopaedic literature written about this injury, and my review of the medical records, that at the exact instant when Mr. Moorehead's skull struck the ground after he fell, he suffered, in addition to the skull fractures, a complete disassociation or separation of the skull from the cervical spine with tearing and separation of the connecting ligaments and the spinal cord, and with the tearing of the spinal cord, he was instantaneously rendered not only to be a quadriplegic with paralysis of all four of his extremities, but in addition, his phrenic nerves were torn, resulting in loss of spontaneous respiration and breathing abilities, a condition often termed pentaplegia.
Had Mr. Moorehead survived, he would have been totally paralyzed from his jaw line on down, he would be 100% dependent on a mechanical respirator for breathing purposes, and his overall neurologic picture, would be worse and more severe than Mr. Christopher Reeves, the now paralyzed actor, who played the movie role of Superman years ago.
 {¶ 22} 8. Initially, the matter was heard before a district hearing officer ("DHO") on December 14, 1998. The DHO denied relator's application on the grounds that, in order to be eligible for an award under R.C. 4123.57(B) a claimant must sustain the loss of use of a limb through amputation because mere loss of use is insufficient. The DHO's decision was affirmed throughout the administrative process.
 {¶ 23} 9. Relator filed a mandamus action in this court which ultimately resulted in the parties entering into a stipulated agreement, dismissing relator's action, and setting forth the correct legal standard to be applied at a new hearing before the commission as follows:
The Industrial Commission finds that the Staff Hearing Officer's reasoning, requiring actual severance of a limb as a condition for the award requested by the claimant, is not the correct legal standard pursuant to State ex rel. Walker v. Indus. Comm. (1979), 58 Ohio St.3d 402.
 {¶ 24} 10. Ultimately, the matter was heard on February 18, 2003 before the commission and resulted in an order denying relator's application for compensation. (The commission's order can be found at pages 151-160 of the Stipulation of Evidence for the court's review.) In denying relator's application, the commission provided the following relevant reasoning:
* * * The widow-claimant alleges that during the one hour and thirty-five minutes between the time of the accident and the time that he was declared dead, the injured worker was a quadriplegic and that benefits are payable to her under R.C. 4123.57(B).
* * *
It is the finding of the Industrial Commission, that pursuant to theWalker decision, actual severance of limbs is not required for an award under R.C. 4123.57(B). However, in this instance, the medical evidence must establish that the decedent sustained a total loss of use of all his extremities due to the fall, before an award under R.C. 4123.57(B) could potentially be granted. Under the present circumstances, the medical evidence does not establish that such a loss was sustained.
The purpose of a scheduled loss of use award under R.C. 4123.57(B) is to compensate an injured worker for the loss of a specific body part due to an industrial injury. The compensation is to offset the handicap the injured worker might suffer due to the severance, or the loss of use, of the body part. Thus, compensation awarded under R.C. 4123.57(B) compensates an injured worker who survives an injury and must endure the loss of a body part on a daily basis. Therefore, it is clear that such benefits may only be awarded to injured workers who, in fact, experience the physical suffering and hardships caused by the loss of a body part.
Consistent with this reasoning, the Industrial Commission finds that the widow-claimant's application for such benefits must fail, as the decedent did not sustain the loss of his extremities, because he was comatose, and completely unaware of the extent of injuries, for the brief period between the accident and his death.
The Industrial Commission finds that an award for the loss of use requires an actual sustained loss of use. A loss of use as contemplated by the statute requires an opportunity for use. Such a loss must be actually perceived and experienced by an injured worker. Such a loss has not occurred where it has not been demonstrated by an injured worker who is cognizant of the loss and is only envisioned in the mind of a medical professional. To find otherwise would convert an award for loss of use into an award for loss of life in any claim where death resulted from an industrial injury. Any such award would be a matter of pure speculation. For in all such deaths, there would be a loss of use due to the natural ischemic process of the brain after the last beat of the heart but prior to the actual state of passing. The Industrial Commission finds therefore that a loss that may have occurred had an injured worker survived is not compensable pursuant to the terms of R.C. 4123.57(B).
The medical evidence submitted to support the request consists of the reports of Dr. Fierra dated 12/13/1998, Dr. Lefkowitz dated 05/02/2002 and 05/24/2002, and Dr. Greenberg dated 02/11/2003. These medical reports all set forth the ultimate conclusion that the decedent would have been paralyzed from the neck down had he survived. In other words, the decedent's loss of use was contingent upon his survival. The fact of survival was an assumed fact critical to each opinion and to the actual loss of use. Tragically, the decedent did not survive. He likewise did not sustain any loss of use.
The Industrial Commission notes that the newly submitted report of Dr. Greenberg indicated that the decedent was instantaneously paralyzed by the fall and also would have instantaneously lost his capacity for breathing. It is puzzling however why death would also not have actually occurred [as] well prior to the stated time if Dr. Greenberg's opinion is true. Given that the opinion in the last paragraph of Dr. Greenberg's report is still contingent upon survival, the report is speculation and equally fails to establish a loss sustained during the decedent's life.
For the reasons previously set forth, the Industrial Commission denies the widow-claimant's request for an award for loss of use pursuant to R.C. 4123.57(B).
 {¶ 25} 11. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 26} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v.Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 27} For the reasons which follow, the magistrate recommends that this court issue a writ of mandamus as will be more fully explained below.
R.C. 4123.57(B) provides, in relevant part, as follows: In cases included in the following schedule the compensation payable per week to the employee is the statewide average weekly wage as defined in division (C) of section 4123.62 of the Revised Code per week and shall continue during the periods provided in the following schedule:
* * *
For the loss of an arm, two hundred twenty-five weeks.
* * *
For the loss of a leg, two hundred weeks.
* * *
When an employee has sustained the loss of a member by severance, but no award has been made on account thereof prior to the employee's death, the administrator shall make an award in accordance with this division for the loss which shall be payable to the surviving spouse, or if there is no surviving spouse, to the dependent children of the employee and if there are no such children, then to such dependents as the administrator determines.
 {¶ 28} Essentially, R.C. 4123.57(B) provides benefits which are in the nature of general damages, but for which the General Assembly has chosen to fix a specific award by allowing compensation at a specified level for a stated number of weeks, depending upon the injury. See State ex rel.Hammond v. Indus. Comm. (1980), 64 Ohio St.2d 237; see, also, State exrel. Gassman v. Indus. Comm. (1975), 41 Ohio St.2d 64; Fleischman v.Flowers (1971), 25 Ohio St.2d 131; State ex rel. General Motors Corp. v.Indus. Comm. (1975), 42 Ohio St.2d 278.
 {¶ 29} Scheduled loss awards pursuant to R.C. 4123.57(B) (formerly R.C. 4123.57[C]) compensate for the "loss" of a body member and were originally confined to amputations, with the obvious exceptions of hearing and sight. In the 1970's, two cases, Gassman and State ex rel.Walker v. Indus. Comm. (1979), 58 Ohio St.2d 402, construed "loss" as similarly used in R.C. 4123.58, to include "loss of use" without severance. Gassman and Walker both involved paraplegics. In sustaining each of their scheduled loss awards, the Supreme Court of Ohio reasoned that: "For all practical purposes, relator has lost his legs to the same effect and extent as if they had been amputated or otherwise physically removed." Gassman at 67.
 {¶ 30} In the present case, the commission denied relator's request for compensation because the decedent did not survive his injuries and because he did not experience those injuries because he was comatose immediately following the accident until the time of his death. Because decedent did not "perceive and experience" the loss of use, the commission determined that his widow, relator herein, is not entitled to the compensation. This magistrate disagrees.
 {¶ 31} The statute talks about loss and that loss encompasses both loss by severance and loss by paralysis. In fact, both loss by severance and by paralysis are to be treated equally in terms of compensation. In the present case, the commission is treating the two differently by requiring that decedent "perceive and experience" his loss of use before compensation can be paid. This "requirement" is not part of the statute.
 {¶ 32} In LaCavera v. Cleveland Elec. Illum. Co. (1984),14 Ohio App.3d 213, the claimant suffered an accident which caused electrical burns and further caused him to fall approximately 35 feet. The injury occurred on August 1, 1981. On August 13, 1981, his leg was amputated and he died on August 15, 1981. The Cuyahoga County Court of Appeals upheld the widow-claimant's award under R.C. 4123.57(C) (now R.C.4123.57[B]). As such, in LaCavera, where the decedent endured the amputation of his leg for approximately two days, the widow-claimant was permitted to receive a scheduled-loss award. However, the commission would distinguish the widow-claimant in the present case because the decedent was only alive for one and one-half hours and was not conscious andaware of his loss. This magistrate finds the distinction between a two day loss and a one and one-half hours loss is untenable. The commission stated in its order that to grant the award in the present case would require that the commission grant an award for loss of use in every claim where death results from an industrial injury because, in death, the person ultimately loses the ability to use their limbs. However, that result is not required.
 {¶ 33} As stated previously, R.C. 4123.57(B) was originally confined to cases of amputation. As such, amputation of one of the enumerated body parts was required before a claimant could recover. Later, in Gassman andWalker, the Supreme Court of Ohio held that loss of use occasioned by paralysis where the loss of use is, for all practical purposes, to the same effect and extent as if they had been amputated or otherwise physically removed, was likewise compensable. In its reasoning, the commission infers that, if a claimant's legs were amputated as a result of an industrial injury and the claimant died on the way to the hospital, that claimant would be entitled to a loss of use award so long as the claimant was at least momentarily aware of the fact that his legs had been severed. If loss of use by paralysis and loss of use by severance are to be given the same meaning then decedent in this case should not be treated any differently than the claimant in the LaCavera
case. Once the loss is substantiated by medical proof, it is compensable.
 {¶ 34} This magistrate directs the court's attention to State ex rel.Scott v. Ohio Bur. of Workers' Comp. (1995), 73 Ohio St.3d 202, where the above situation did, in fact, occur. In that case, the decedent had both legs severed in a 1977 industrial accident. He survived the accident, but died on the way to the hospital. Fourteen years later, the decedent's widow filed an application for the payment of compensation accrued at the time of death alleging that, had the decedent lived, he would have qualified for benefits under R.C. 4123.57(C) (now R.C. 4123.57[B]) for his amputated limbs. A DHO ordered compensation to be paid, and that order was not appealed. However, prior to payment on the order, the commission exercised its continuing jurisdiction and vacated the DHO order, finding that the application was barred by former R.C. 4123.60's one-year statute of limitations. Ultimately, the court upheld the commission's decision denying compensation, not because the award could not have been paid if the request would have been timely made, but because the widow did not file her claim within the appropriate time limitations.
 {¶ 35} As such, because nothing in the statute states that a claimant must live for a certain period of time with their injuries in order for those injuries to be compensable, this magistrate finds that the commission abused its discretion in denying relator's application for compensation pursuant to R.C. 4123.57(B) for the loss of use of decedent's arms and legs. Although relator asserts that this court should grant her compensation pursuant to State ex rel. Gay v. Mihm (1994),68 Ohio St.3d 315, this magistrate disagrees. Relator did submit medical evidence from doctors indicating that, had decedent lived, he would have, within a reasonable degree of medical certainty or probability, experienced complete or nearly complete permanent loss of use of all four of his extremities. Dr. Greenberg did state that, it was his opinion that decedent was instantaneously rendered a quadriplegic; however, in light of the fact that the commission did not consider the evidence and did not consider the medical evidence, the magistrate finds that the commission should review that medical evidence, determine the weight and credibility of the evidence, and make a determination as to whether or not decedent sustained the loss of use of both arms and both legs as a result of the industrial injury.
 {¶ 36} Based on the foregoing, it is this magistrate's decision that a writ of mandamus should issue ordering respondent Industrial Commission of Ohio to vacate its decision which denied relator's application seeking an award for the scheduled loss of use of decedent's arms and legs, pursuant to R.C. 4123.57(B), based solely upon the fact that decedent was not able to perceive his loss as he was comatosed and did not live beyond one and one-half hours and would order the commission to review the medical evidence and reach the determination of whether or not relator met her burden of proof that decedent did indeed sustain the loss of use of both arms and both legs as a result of the industrial injury.