468 So.2d 904 (1985)
Mary Ellen O'NEIL, Petitioner,
v.
DEPARTMENT OF TRANSPORTATION and Crawford & Company, Respondents.
No. 64809.
Supreme Court of Florida.
March 7, 1985.
Rehearing Denied June 4, 1985.
L. Barry Keyfetz of Keyfetz, Poses & Halpern, Miami, for petitioner.
Kay & Silber, P.A., and Douglas J. Glaid of Glaid & DiMauro, Fort Lauderdale, for respondents.
*905 ALDERMAN, Justice.
Mary O'Neil seeks review of the decision from the District Court of Appeal, First District, in O'Neil v. Department of Transportation, 442 So.2d 961, 963 (Fla. 1st DCA 1983), which certified the following question to be of great public importance:
Does Section 440.15(3)(b)3.d., Florida Statutes (1979), violate the supremacy clause of the United States Constitution because it conflicts with the Federal Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. (1976)?
We answer the certified question in the negative and approve the decision of the district court.
O'Neil filed a workers' compensation claim for permanent total disability benefits or, in the alternative, for wage loss benefits due to work related injuries occurring on May 17, 1980. The deputy commissioner denied her request for permanent total disability benefits finding no competent or substantial evidence of the claimant's inability to return to work. The commissioner also found that section 440.15 precludes the recovery of wage loss benefits when the claimant is over the age of 65 and is receiving social security benefits. Therefore, he found that O'Neil's right to such benefits terminated on August 4, 1980, when O'Neil attained the age of 65 and was eligible to receive social security benefits.
On appeal, the First District Court of Appeal affirmed the commissioner's order, citing its earlier decision in Sasso v. Ram Property Management, 431 So.2d 204 (Fla. 1st DCA 1983). The district court's decision in Sasso was subsequently approved by this Court in Sasso v. Ram Property Management, 452 So.2d 932, 934 (Fla.), appeal dismissed, ___ U.S. ___, 105 S.Ct. 498, 83 L.Ed.2d 391 (1984). In that case, we held that section 440.15(3)(b)3.d. did not deny access to the courts or unconstitutionally discriminate on the basis of age.
On rehearing, the First District, in the present case, also held that section 440.15(3)(b)3.d. was not unconstitutional under the supremacy clause as violative of 29 U.S.C. § 623, the Age Discrimination in Employment Act. This Act provides in pertinent part:
(a) It shall be unlawful for an employer 
(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; ... (Emphasis supplied.)
The district court reasoned that the provisions of Florida's Workers' Compensation Law do not constitute "compensation, terms, conditions, or privileges of employment" within the meaning of 29 U.S.C. § 623. We agree.
We find no merit in any of the other arguments raised by O'Neil.
Accordingly, the decision of the district court is approved.
It is so ordered.
BOYD, C.J., and OVERTON, McDONALD and EHRLICH, JJ., concur.
SHAW, J., dissents with an opinion.
ADKINS, J., dissents.
SHAW, Justice, dissenting.
The majority approves the district court's conclusion that workers' compensation benefits do not constitute compensation, terms, and conditions, or privileges of employment within the meaning of 29 U.S.C. § 623 (1976), Age Discrimination in Employment Act (ADEA). I disagree for the reasons set forth below.
The general purpose of workers' compensation is to compensate workers for work-related injuries and prevent their dependents, in the event of death, from becoming public burdens. Instead of placing the burden of compensating the injured employee directly on the worker, the legal system, or the public, the burden is placed on employers and passed on to the consumers of their products or services. For the purposes of *906 chapter 440, Florida Statutes (1979), the state and its political subdivisions, in their capacity as employers, are treated no differently than private employers, except that they are deemed to be self-insurers unless they elect to obtain private insurance. See §§ 440.02(4) and 440.38(6), Fla. Stat. (1979). The system is intended to be self-executing with the employer or insurance carrier paying benefits without recourse to legal or administrative proceedings. Even when it is necessary to resort to such proceedings in order to obtain benefits, with exceptions that are not pertinent here, the benefits are not paid by the state unless a government body is the self-insured employer. See § 440.38(1). Wage loss benefits, which are at issue here, are paid solely and directly by the employer/insurance carrier to the employee. See §§ 440.15(3)(b) and 440.20(4). Even in those instances where the state Division of Workers' Compensation, as a non-employer, furnishes benefits, the costs of the benefits and the administration of the system are assessed against self-insured employers and insurance carriers. Such payments by the division are made from separately administered trust funds. See §§ 440.15(1)(e), 440.49(2)(h), 440.50, 440.51, Fla. Stat. (1979); Fla. Admin. Code Ch. 38F-4.
Florida's Workers' Compensation Act mandates and enforces a contractual relationship between employer and employee whereby the employer provides no-fault compensation for work related injuries and the employee surrenders the right to bring common law and statutory causes of action against the employer for such injuries. This approach is consistent with what this Court has previously described as the fundamental purpose of workers' compensation: "to relieve society of the burden of caring for an injured employee by placing the burden on the industry involved." Sullivan v. Mayo, 121 So.2d 424, 430 (Fla. 1960). See generally 35 Fla.Jur. Workmen's Compensation §§ 1-25 (1961). With this background and understanding of the system in mind, it is a misnomer to characterize workers' compensation benefits as "government-provided" because, in sum, employers bear the entire cost of the system and provide all of the benefits. The state simply spells out the rules under which employers and employees interface.
In support of its holding, the district court found it
significant that the Department of Labor's interpretation of this federal statute, contained in 29 CFR § 860.1, et seq. (1983), implicitly supports appellee's argument that the prohibitions of 29 U.S.C. § 623 (a) are limited to employment practices within the control of employers and do not encompass governmental action such as workers' compensation laws. 29 CFR 860.120(e) addresses the relationship of employer-provided benefits and government-provided benefits.[3] This subsection explicitly recognizes that the availability of government benefits, e.g., Medicare, may be based on age. We see little distinction, for purposes of the ADEA, between governmental enactments which provide for benefits to be paid ... by others.
[3] 29 C.F.R. § 860.120(e) states:
(e) Benefits provided by the Government. An employer does not violate the Act by permitting certain benefits to be provided by the Government, even though the availability of such benefits may be based on age. For example, it is not necessary for an employer to provide health benefits which are otherwise provided to certain employees by Medicare. However, the availability of benefits from the Government will not justify a reduction in employer-provided benefits if the result is that, taking the employer-provided and Government-provided benefits together, an older employee is entitled to a lesser benefit of any type (including coverage for family and/or dependents) than a similarly situated younger employee. For example, the availability of certain benefits to an older employee under Medicare will not justify denying an older employee a benefit which is provided to younger employees and is not provided to the older employee by Medicare.
O'Neil v. Department of Transportation, 442 So.2d 961, 962 (Fla. 1st DCA 1983) (footnote in original) (emphasis supplied). Contrary to the district court and majority view, it is clear to me that the import of 29 C.F.R. 860.120(e) is an attempt on the part of the federal government to allow employer-provided benefits to be offset by government *907 benefits (Medicare, social security) so long as the total benefits are not reduced to the point where the older employee is entitled to lesser benefits than a similarly situated younger employee.
In Sasso v. Ram Property Management, 452 So.2d 932 (Fla.), appeal dismissed, ___ U.S. ___, 105 S.Ct. 498, 83 L.Ed.2d 391 (1984), we approved the district court's decision in Sasso v. Ram Property Management, 431 So.2d 204 (Fla. 1st DCA 1983), which held that section 440.15(3)(b)3.d., Florida Statutes (1979), did not deny access to the courts or unconstitutionally discriminate on the basis of age. A reading of the district court decision in Sasso is instructive. First, the claimant in Sasso was seventy-eight years of age and fell outside the protection of the ADEA. His reliance was upon general constitutional principles rather than the ADEA shelter. The court was careful to note that claimants who are covered by ADEA "may have a remedy under the federal act to contest conflicting state statutes allegedly disadvantaging them." Sasso, 431 So.2d at 224. Second, the district court in Sasso found that age was not a constitutionally suspect or quasi-suspect class and applied the rational basis test to the statute. In so doing, the court identified three legislative objectives which met the rational basis test:
(1) to reduce payments of employment-related fringe benefits owing to a decline in older workers' productivity and physical abilities;
(2) to offer increased job opportunities to young workers entering the labor force by creating incentives to older workers to retire by decreasing disability coverage; and
(3) to reduce the cost of insurance premiums by terminating payments to older workers.
Sasso, 431 So.2d at 219-20. While these legislative objectives may meet the rational basis test, it is apparent that they are not in accord with the objectives of ADEA. All three unabashedly and intentionally discriminate against older employees on the basis of age. The Sasso district court implicitly recognized this:
Indeed, the Senate Committee on Aging, in amending the Age Discrimination in Employment Act of 1967, commented:
From the evidence presented, the committee concludes that "age" should be as protected a classification as race and sex. The argument that everyone ages and no particular group is singled out for discrimination ignores the fact that discrimination solely on the basis of age is wrong. If mandatory retirement because of age  the final step in the practice of age discrimination  is not to be declared unconstitutional by the Courts, then Congress should act to make such a practice illegal.

See Senate Committee on Aging, Mandatory Retirement: The Social and Human Cost of Enforced Idleness at 37-38 (August 1977) (emphasis supplied), cited in U.S.E.E.O.C. v. County of Calumet, 519 F. Supp. 195, 199 (E.D.Wis. 1981).
Sasso, 431 So.2d at 224.
The final question is whether the Workers' Compensation Act is exempted from the supremacy clause because the act was enacted by the state legislature pursuant to the police power of the state. The district court below conceded that a state can be considered an employer for purposes of ADEA under EEOC v. Wyoming, 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983). The court, however, based its conclusion on the fact that "the workers' compensation law was not created by the State in its role as an employer, but rather was enacted by the Legislature pursuant to the police power of the State to protect the health, safety and welfare of all employees." O'Neil v. DOT, 442 So.2d at 962. This reasoning is faulty on two counts. First, it suggests that the state, as an employer, could evade EEOC v. Wyoming and the ADEA by enacting a statute based on its police power. Second, it suggests that the police power of the state is exempted from the supremacy clause. If section 440.15(3)(b)3.d. is contrary to the ADEA, then it must give way. In my view wage loss is an employer-provided *908 benefit which cannot be totally denied an employee on the basis of age when the practical effect of the denial is to place an older employee in a less favored position than a younger employee. The fact that the older employee receives government-provided benefits is not dispositive, but only one of several factors to be considered in determining whether the older employee is in fact being placed in a less favorable position. I respectfully dissent.