475 So.2d 230 (1985)
Betty NEWTON, Petitioner,
v.
McCOTTER MOTORS, INC., and Corporate Group Service, Respondents.
No. 65764.
Supreme Court of Florida.
August 30, 1985.
Richard A. Sicking of Kaplan, Sicking, Hessen, Sugarman, Rosenthal, Susskind, Bloom & DeCastro, Miami, for petitioner.
B.C. Pyle, Orlando, for respondents.
ALDERMAN, Justice.
We review the decision of the District Court of Appeal, First District, in McCotter Motors, Inc. v. Newton, 453 So.2d 117 (Fla. 1st DCA 1984), wherein the First District upheld the constitutional validity of section 440.16(1), Florida Statutes[*] which requires, in order for death to be compensable under the Workers' Compensation Law, that death must result within one year of the accident or must follow continuous disability and must result from the accident within five years of the accident. We approve the district court's holding which declares section 440.16(1) constitutional.
Betty Newton's husband, Leslie, sustained a compensable industrial accident on April 30, 1973, while in the employment of McCotter Motors, Inc. As a result of this accident, he underwent multiple back surgeries which required bed rest. Because of the bed rest, he developed thrombophlebitis of his legs for which condition he was treated with anticoagulation therapy to thin his blood and to prevent clotting. Resulting from this therapy, he sustained several episodes of internal bleeding. His condition was further complicated by back pain, depression, and reactive hypertension. He was continuously disabled from the date of his accident until his death on May 5, 1982, which resulted from cerebral hemorrhage. Betty Newton applied for dependency death benefits under the Workers' *231 Compensation Law as the widow of Leslie. The employer/carrier contested the claim on the basis that Leslie's death occurred more than five years following the accident and that her claim was therefore barred by section 440.16(1).
Refusing to enforce section 440.16 because he determined that application of this statute to this case would produce an unconstitutional result, the deputy commissioner awarded benefits to Betty Newton.
The First District reversed and upheld the constitutionality of section 440.16(1) against challenges that it denied due process of the law, to-wit: access to the courts, and denied equal protection of the law. We agree. The district court correctly reasoned:
In the past, this Court and the Florida Supreme Court have upheld similar attacks on other sections and subsections of chapter 440. In light of the precedent set by those cases, we find that appellee has not sustained her burden of showing that section 440.16(1) is unconstitutional. Compare Acton v. Ft. Lauderdale Hospital, 418 So.2d 1099 (Fla. 1st DCA 1982) (the fact that the 1979 amendments to chapter 440 eliminated most of the "scheduled injury" benefits did not render those amendments violative of the equal protection or access to the courts guarantees of the state or federal constitutions); Sasso v. Ram Property Management, 431 So.2d 204 (Fla. 1st DCA 1983) (the provision of section 440.15(3)(b)3.d., Florida Statutes (1979), which terminates the right to wage loss benefits when the injured employee reaches age sixty-five and becomes eligible for social security benefits, does not violate constitutional guarantees); Morrow v. Amcon Concrete, Inc. 433 So.2d 1230 (Fla. 1st DCA 1983) (the 440.15(3)(b)4, Florida Statutes (1979) reduction by up to 50 percent of wage loss benefits at age sixty-two when the employee is receiving social security benefits was held constitutional). See also Mahoney v. Sears, Roebuck & Company, 419 So.2d 754 (Fla. 1st DCA 1982); and Beauregard v. Commonwealth Electric, 440 So.2d 460 (Fla. 1st DCA 1983) (upholding section 440.15(3)(a)1 (1980) and (1981), which placed a dollar cap on eye injuries to the extent that, the claimants argued, the benefits provided were so paltry as to deny them redress for their injuries, as provided in article I, section 21, Florida Constitution).
453 So.2d at 119. See also Sasso v. Ram Property Management, 452 So.2d 932 (Fla), appeal dismissed, ___ U.S. ___, 105 S.Ct. 498, 83 L.Ed.2d 391 (1984); O'Neil v. Department of Transportation, 468 So.2d 904 (Fla. 1985); Iglesia v. Floran, 394 So.2d 994 (Fla. 1981); Mullarkey v. Florida Feed Mills, Inc., 268 So.2d 363 (Fla. 1972).
Accordingly, we hold section 440.16(1) constitutional and approve the decision of the district court.
It is so ordered.
BOYD, C.J., and OVERTON and McDONALD, JJ., concur.
EHRLICH, J., dissents with an opinion, in which ADKINS and SHAW, JJ., concur.
EHRLICH, Justice, dissenting.
I dissent from the majority because I find that the absolute bar to death benefits constitutes an unconstitutional denial of access to the courts, article I, section 21, Florida Constitution, by abolishing the remedy before death occurs thereby denying the widow the opportunity to present facts at a hearing which show the causal relationship of the death to the accident and her dependency on the deceased. Dependency and causal relationship cannot cease to exist by legislative decree on the first or fifth anniversary of the accident  passage of time does not affect them. I also dissent because I find the statute is a denial of equal protection of the law.
The legislature cannot abolish a cause of action existing prior to the Declaration of Rights, section 4, Florida Constitution (1885) (predecessor to article I, section 21, Florida Constitution (1968)) without providing a suitable alternative, absent overpowering public necessity and lack of alternatives. *232 Kluger v. White, 281 So.2d 1 (Fla. 1973). A statutory cause of action for wrongful death existed prior to 1885. Ch. 3439, Laws of Fla. (1883). The legislature therefore cannot abolish a cause of action for wrongful death without providing a reasonable alternative. Cf. Martin v. United Security Services, Inc., 314 So.2d 765 (Fla. 1975) (1972 Wrongful Death Act provided reasonable alternative for damages for decedent's pain and suffering recoverable under prior act). Florida's Workers' Compensation Act provides a reasonable alternative for many causes of action abolished by the Act, as the cases relied upon by the majority demonstrate. The Act provides a reasonable alternative for death within the five-year period provided by statute. But absolutely no alternative is provided for deaths occurring after the five-year period has run.
The majority apparently believes that the other benefits available to the deceased prior to his demise adequately substitute for the loss of the cause of action for wrongful death. This rationale can be found in our most recent examination of a challenge to workers' compensation on due process grounds, Sasso v. Ram Property Management, 452 So.2d 932 (Fla.), appeal dismissed, ___ U.S. ___, 105 S.Ct. 498, 83 L.Ed.2d 391 (1984). We held that reduction of wage-loss benefits beginning at age 62, and complete denial of said benefits after age 65, did not violate article I, section 21 because injured older workers were still eligible for all other workers' compensation benefits, i.e. continuing medical expenses and temporary and permanent total disability benefits. In other words, older employees would receive "some of the compensation which a tort suit might have provided had [the worker] been forced to pay his own expenses and subsequently seek redress in court." Id. at 934.
The Sasso rationale is distinguishable from the instant case. Wage-loss damages are of the same quality and order of magnitude as the other damages (medical expenses and disability) designated in Sasso, and therefore the partial extinction of a cause of action for such damages in return for the remaining workers' compensation benefits is a "reasonable alternative." The death of a worker, on the other hand, is qualitatively different and of far greater magnitude. The legislature recognized this when it provided a death benefit separate and beyond any benefits paid in the interim between injury and death. Benefits paid during the life of the worker therefore cannot, and never were intended by the legislature to, substitute as a reasonable alternative for a cause of action for wrongful death. The legislature effectively has abolished a cause of action for work-related deaths and has failed to provide a reasonable alternative.
The Supreme Court of Oklahoma considered the same question in Roberts v. Merrill, 386 P.2d 780 (Okla. 1963) and held that a similar provision in that state's workers' compensation act was unconstitutional. Roberts was the widow of a workman employed by Merrill who suffered a compensable accident resulting in permanent total disability. He died of his injuries more than five years after the accident. Oklahoma's Workman's Compensation Act likewise barred benefits if death occurred more than five years from the date of the accident following continuous disability. Oklahoma had a provision in its state constitution which guaranteed the right of action for wrongful death, but allowed workers' compensation death benefits to be enacted by the legislature, which remedy would be exclusive. The trial tribunal denied the claim based on the five-year provision in the statute. The supreme court reversed, holding that the provision was invalid in light of the constitutional protection of the wrongful death action, and remanded the case for determination of entitlement to workman's compensation benefits absent the offending provision.
In the case at bar, we are not concerned with the question of the general legislative power to regulate procedure governing the prosecution of death benefit rights, but with a restrictive condition which operates to abridge or abrogate the right itself to that class of persons *233 whose decedents die later than the maximum period allowed to intervene between injury and demise. Such restriction, which bars the right to effectively pursue a remedy, is beyond the legislative authority.. .
* * * * * *
... we conclude the lawmaking body of this state remains, as before, without authority to ordain that beyond a given interval between injury and death there exists no right to pursue a remedy before some tribunal. The cause of death, regardless of the time when death occurs, presents an adjudicatory fact to be resolved from the evidence, and the Legislature continues to be without power of predetermining causation by means of a statutory fiat.
Roberts v. Merrill, supra, at 785.
While Florida does not have a specific constitutional guarantee of actions for wrongful death, it does have the "access to courts" provision of article I, section 21 of the Florida Constitution, as well as the due process guarantee of article I, section 9 of the Florida Constitution and the fourteenth amendment of the United States Constitution. Actions for wrongful death already existed by statute when the people of Florida adopted the access to courts provision in the 1885 Constitution. Thus, while Florida does not have a specific constitutional provision recognizing an action for wrongful death as does Oklahoma, this State does recognize a wrongful death action as part of the organic law of the state protected by the access to courts provision of our constitution.
The deficiency of the Florida Act is that it, in effect, creates a class of persons for whom there is no remedy available for death claims: The surviving spouse of an employee who in fact dies as a result of his injuries caused by an on-the-job accident more than five years before, following continuous disability.
The five-year provision of the statute creates a conclusive and irrebuttable presumption in law against causal relationship of the death to the on-the-job accident and a conclusive and irrebuttable presumption against dependency. Notwithstanding the actual facts, there is no opportunity for the widow or other dependents to prove entitlement. For them there is no remedy at all. The denial of access to the courts is total and complete.
I am also persuaded that the five-year rule denies equal protection of the law. Newton introduced evidence, unrebutted by respondent, that when the statute was first established in 1935, medical science was not sufficiently advanced to establish that an injury caused a death more than five years later. While respondents argue against this conclusion, the record reflects that contemporary medical analysis can establish a causal relationship between a work-related injury and death over periods greater than five years.[1] The conclusive presumption raised by the five-year limit is therefore indefensible on the ground that it exists to bar death benefit claims after a point when a causal relationship cannot be proven. The classification is arbitrary, regardless of whether it was at one time rational.
Another conceivable justification for the rule might be that it saves money and therefore keeps the costs of the workers' compensation program reasonable. However, there must be some reasonable connection between the classification and cost reduction beyond the savings realized from *234 excluding the classification from benefits.[2] In the district court decision in Sasso v. Ram Property Management, 431 So.2d 204 (Fla. 1st DCA 1983), Judge Ervin wrote that there must be some reasonable basis for a classification. In that case, there was a reasonable basis for ending wage-loss benefits at age 65 to reduce the costs of premiums in the workers' compensation program because "it is well recognized that the aged are `more prone to on-the-job injuries.'"
The law does not look with favor on conclusive presumptions. This Court has stated in Straughn v. K & K Land Management, Inc., 326 So.2d 421, 424 (Fla. 1976) (citations omitted):
The test for the constitutionality of statutory presumptions is twofold. First, there must be a rational connection between the fact proved and the ultimate fact presumed. Second, there must be a right to rebut in a fair manner.
The fact proved is that death followed more than five years of continuous disability. The fact presumed is that there is no causal connection between either the accident and the ensuing death or the dependency of the widow. It is patent that there is no rational connection between the five year period and causality and dependency. Neither does the statute afford the widow a right to rebut the presumption in any manner whatsoever.
The classification in this case is between the survivors of workers who died from work related injuries within five years of the injury, and the survivors of those who died after five years. Respondents suggest no reason for the classification, and instead argue that the period in which a worker must die to trigger the death benefit is entirely within the province of the legislature. I cannot agree. If the period were an unfettered legislative prerogative, the legislature theoretically could allow the benefit only when the injury caused the instantaneous death of the worker, or even eliminate the death benefit entirely. This would undeniably violate article I, section 21. Instead, the legislature has provided a death benefit but arbitrarily cuts off eligibility after five years. I can conceive of no justification for such a cut off date other than to save money. Given the arbitrariness of the time limit, it is unsupportable and a violation of the state and federal equal protection clauses.
For the reasons discussed above, I dissent to the majority.
ADKINS and SHAW, JJ., concur.
NOTES
[*] Section 440.16(1) expressly provides:

(1) If death results from the accident within 1 year thereafter or follows continuous disability and results from the accident within 5 years thereafter, the employer shall pay: ...
[1] Newton invited our attention to Georgia Southern & Florida Railway Co. v. Seven-Up Bottling Co., 175 So.2d 39 (Fla. 1965), wherein we reiterated our long-standing rule that arbitrary classifications cannot withstand even minimal scrutiny under the equal protection clause. In that case, we held that the economic conditions no longer justified a special exception to the contributory negligence doctrine for railroads to permit comparative negligence in suits against railroads. Petitioner argues that this case recognizes that change can render a once rational classification arbitrary and violative of equal protection. In the instant case, there is no need to justify the five-year rule as rational at some earlier point in time. It is enough that it is presently irrational.
[2] The Supreme Court rejects cost-savings alone as a justification for a classification:

We recognize that a State has a valid interest in preserving the fiscal integrity of its programs. It may legitimately attempt to limit its expenditures, whether for public assistance, public education, or any other program. But a State may not accomplish such a purpose by invidious distinctions between classes of its citizens. It could not, for example, reduce expenditures for education by barring indigent children from its schools. Similarly, in the cases before us [the challenged regulation denied welfare benefits to those who had resided in the state for less than a year], appellants must do more than show that denying welfare benefits to new residents saves money. The saving of welfare costs cannot justify an otherwise invidious classification.[11]
[11.] In Rinaldi v. Yeager, 384 U.S. 305 [86 S.Ct. 1497, 16 L.Ed.2d 577] (1966), New Jersey attempted to reduce expenditures by requiring prisoners who took an unsuccessful appeal to reimburse the State out of their institutional earnings for the cost of furnishing a trial transcript. The Court held the New Jersey statute unconstitutional because it did not require similar repayments from unsuccessful appellants given a suspended sentence, placed on probation, or sentenced only to a fine. There was no rational basis for the distinction between unsuccessful appellants who were in prison and those who were not.
Shapiro v. Thompson, 394 U.S. 618, 633, 89 S.Ct. 1322, 1330, 22 L.Ed.2d 600 (1969). Although Shapiro involved the right to interstate travel and therefore invoked the strict scrutiny test, the Court specifically noted that the classification failed even the "traditional standard," i.e. "equal protection is denied only if the classification is `without any reasonable basis.'" Id. at 638, n. 20, 89 S.Ct. at 1333, n. 20. The constitutional protection of the wrongful death action also serves to elevate the standard of review in this case.