716 P.2d 241
**Jimmy FIERRO, Petitioner,**

v.

**STANLEY'S HARDWARE, Sentry Claims Service, Vicente B. Jasso, State Superintendent of Insurance and the New Mexico Subsequent Injury Fund, Respondents.**

**No. 16047.**

Supreme Court of New Mexico.

March 27, 1986.

Albert J. Rivera, Alamogordo, for petitioner.

Miller, Stratvert, Torgerson & Brandt, Gregory W. Chase, Alice Tomlinson-Lorenz, Albuquerque, for Stanley's & Sentry.

Durrett & Jordon, Lisa K. Durrett, Charles W. Durrett, Alamogordo, for Jasso & NM Subsequent Injury Fund.

## OPINION

FEDERICI, Justice.

This is a worker's compensation action in which plaintiff sued his employer, Stanley's Hardware, and its insurance carrier (employer), and the New Mexico Subsequent Injury Fund and its administrator (the Fund). From a judgment in favor of plaintiff against employer and the Fund, the Fund and plaintiff appealed. The Court of Appeals reversed the district court in part. Plaintiff filed for a writ of certiorari, which this Court granted. We now reverse the Court of Appeals in part.

The issues now before us on writ of certiorari are: (1) whether the New Mexico Subsequent Injury Act, NMSA 1978, Sections 52–2–1 to –13, is applicable where the certificate of pre-existing physical impairment is filed after the subsequent injury and the employer had prior actual knowledge of the pre-existing impairment, and if so whether employer in this case had sufficient prior knowledge; and (2) whether the Scheduled Member section of the Workmen's Compensation Act, NMSA 1978, Section 52–1–43, applies to the Subsequent Injury Act and limits recovery from the Fund.

**Facts:**

The facts are well stated in the Court of Appeals opinion and we restate them in part here.

At the time he was hired in 1981, plaintiff suffered from a condition known as "Descemet's folds" or "corneal folds" to his right eye, a condition caused by birth trauma or congenital defect. This condition is not correctable by lenses and rendered plaintiff legally blind in the right eye before his subsequent injury. Notwithstanding, plaintiff had a driver's license, and was hired as a truck driver. Employer was not aware of this condition at the time of hiring. After hiring plaintiff, employer learned that plaintiff had "some sort of problem" with his eye, but retained plaintiff as an employee.

While plaintiff was helping his foreman jump-start a motor vehicle at work on April 3, 1982, the vehicle's battery exploded causing severe injury to plaintiff's left eye. Without correction, impairment to the left eye is 100%. If sight to this eye is corrected to potential, the impairment may be reduced to 90–95%.

Since the accident and because of increased use, vision in plaintiff's right eye has improved slightly so that this eye is

just above legal blindness. Further improvement is not expected. Using both eyes plaintiff can read a "no-smoking" sign at ten to twelve inches.

Plaintiff attached to his first amended complaint a certificate of pre-existing impairment signed by plaintiff and a physician which recites plaintiff's deficiency in the right eye and states, "[t]hese folds may have been congenital or could possibly have been a result of birth trauma." It recites an 80% disability. The certificate reflects a date of examination of August 29, 1980. It was signed by plaintiff on July 29, 1983, and by the doctor on September 16, 1982, both subsequent to the accidental injury.

The trial court found, among other things, that: before his accidental injury of April 3, 1982, plaintiff had a visual impairment of 90% to his right eye due to congenital defect or birth trauma; plaintiff timely filed a certificate of pre-existing impairment with the Department of Insurance indicating plaintiff had a "preexisting 80% permanent impairment as a result of the defect in his right eye"; employer had knowledge of the "disability to the Plaintiff's right eye," and in spite of such knowledge retained him in its employment; plaintiff was able to perform the usual tasks of his employment before the accident of April 3, 1982; as a result of that accidental injury, plaintiff sustained a partial loss of use to the left eye, with visual acuity being reduced from 20/100 to 20/200 (modified by the Court of Appeals); plaintiff sustained "a 75% partial permanent wage earning disability," due to the injury to the left eye (modified by the Court of Appeals), but had suffered no separate distinct injury to any other part of the body; and plaintiff was not totally disabled from performing work for which he was capable by reason of his background, training and experience.

The trial court entered a judgment providing for additional compensation through the Fund. Under the trial court's judgment plaintiff received temporary total disability for a 47-week healing period (April 3, 1982 through March 1, 1983); 75% partial disability for 553 weeks, and medical expenses, vocational rehabilitation and at-torney fees. The judgment also required employer to pay as temporary total disability the first eight weeks of the healing period under Section 52-2-11(C). For the remaining 39 weeks and two days of the healing period, liability was apportioned between employer and the Fund, with employer paying 20% and the latter 80%. The judgment required employer to pay 75% partial disability compensation to plaintiff for the first 120 weeks following the healing period (i.e., 20% of the entire 600 weeks), and the Fund to pay 75% partial disability for the remaining 433 weeks. Medical expenses, vocational rehabilitation, costs and attorney fees were apportioned between employer and the Fund on the basis of 20–80%, respectively.

**Procedural Issue:**

A procedural point presented on certiorari is whether the issue of the extent of knowledge that an employer must have was raised and preserved below. The Fund contends this issue was not preserved below. We disagree. The record reflects that the issue of actual knowledge was preserved.

### I. Subsequent Injury Fund:

The Court of Appeals held that the facts in the present case did not support a finding that employer had actual knowledge of plaintiff's pre-existing physical impairment. The Court of Appeals also re-examined and overruled, in part, its prior decision in *Vaughn v. United Nuclear Corp.*, 98 N.M. 481, 650 P.2d 3 (Ct.App.), *cert. quashed*, 98 N.M. 478, 649 P.2d 1391 (1982).

The express legislative intent of the New Mexico Subsequent Injury Act is to supplement the Workmen's Compensation Act by: (a) affording a handicapped worker an "opportunity to maintain his independence and self respect through self support," Section 52-2-2(A); (b) providing an equitable and practical plan to remove obstacles to employment for the handicapped, Section 52-2-2(B); and (c) logically and equitably adjusting the employer's liability by enacting a "reasonable approach" to the solution of employing the handicapped, Section 52-2-2(C).

The Fund is custodian or trustee of a fund of money contributed to by insurance companies and self-insured employers. Section 52–2–4. Its main purpose is to insure that the intent of the legislation is implemented. *Id.*

■ Section 52–2–6 allows filing of a certificate at any time. It provides that:

A. Any worker may *at any time* file, and any employer may require a workman, as a condition of employment or continued employment, to file with the superintendent of insurance, a certificate of preexisting physical impairment.

\* \* \* \* \* \*

D. In the event the certificate of preexisting physical impairment certifies that the impairment was the result of an accidental injury, the Subsequent Injury Act shall be applicable to any disability arising out of accident or occurrence taking place after the date a certificate is executed. (Emphasis added.)

In *Vaughn v. United Nuclear Corp.* the Court of Appeals held that where the employer, prior to a subsequent injury, had actual knowledge of the employee's pre-existing physical impairment, the certificate of pre-existing physical impairment can validly be filed after the subsequent injury. *Accord, Gutierrez v. City of Gallup,* 102 N.M. 647, 699 P.2d 120 (Ct.App.1984), *cert. quashed,* 102 N.M. 734, 700 P.2d 197 (1985).

We agree with *Vaughn,* and we reaffirm the following language found in *Vaughn:*

The language contained in § 52–2–6(D), *supra,* states that "the Subsequent Injury Act shall be applicable to any disability arising out of accident or occurrence taking place after the date a certificate is executed." This was not intended to foreclose impleading the Superintendent of Insurance on behalf of the Second Injury Fund where a certificate is executed and filed after a workman incurs a subsequent injury and where the employer had actual knowledge of the employee's prior disability.

98 N.M. at 487, 650 P.2d at 9.

■ In the present case the trial court found that plaintiff had a pre-existing disability; that prior to the subsequent injury employer had sufficient actual knowledge of the pre-existing disability; and that plaintiff timely filed a certificate of pre-existing physical impairment with the New Mexico Department of Insurance under the Subsequent Injury Act (although it was filed after the subsequent injury).

The trial court then concluded that plaintiff was entitled to compensation under the Subsequent Injury Act. The record supports the trial court's findings and the trial court correctly concluded that the accident of April 23, 1982 resulted in a subsequent injury compensable under the New Mexico Subsequent Injury Act. We affirm the trial court and reverse the Court of Appeals on this issue.

## II. Applicability of the Scheduled Member Section:

The trial court held that the limitations on liability in the Scheduled Member section, NMSA 1978, Section 52–1–43, do not apply to the Fund. The Fund appealed this, but the Court of Appeals did not reach the issue. Since the Court of Appeals held that the Fund was not implicated anyway, because the certificate of pre-existing injury was not timely filed and employer lacked actual knowledge, this second issue became moot. Because we have now reversed the Court of Appeals on the issue of the certificate's filing and actual knowledge, the question of the Scheduled Member section's applicability to the Fund is no longer moot and requires resolution. We remand this issue for a determination by the Court of Appeals.

The cause therefore is remanded to the Court of Appeals for proceedings consistent with this opinion.

IT IS SO ORDERED.

RIORDAN, C.J., SOSA, Senior Justice, and STOWERS and WALTERS, JJ., concur.