728 P.2d 488

**Loretta MEDINA, Plaintiff-Appellant,**

v.

**ORIGINAL HAMBURGER STAND, and United Pacific Insurance Co., Defendants-Appellees.**

**No. 9155.**

Court of Appeals of New Mexico.

Oct. 28, 1986.

Roger V. Eaton, Messersmith, Eaton & Keenan, Albuquerque, for plaintiff-appellant.

John P. Massey, Butt, Thornton & Baehr, P.C., Albuquerque, for defendants-appellees.

## OPINION

BIVINS, Judge.

Plaintiff appeals from a judgment dismissing her claim for worker's compensation benefits. As a result of our decision in *Fierro v. Stanley's Hardware*, 104 N.M. 401, 722 P.2d 652 (Ct.App.1985), *rev'd on other grounds*, 104 N.M. 50, 716 P.2d 241 (1986), holding a psychologist could not render "expert medical testimony" as to causation under NMSA 1978, Section 52-1-28(B), the trial court disallowed plaintiff's osteopathic physician from rendering expert medical testimony as to causation. This appeal presents the question of whether the trial court erred in disallowing that testimony. We hold it did and reverse.

Section 52-1-28(B) provides:

In all cases where the defendants deny that an alleged disability is a natural and direct result of the accident, the workman must establish that causal connection as a *medical probability by expert medical testimony*. No award of compensation shall be based on speculation or on expert testimony that as a medical possibility the causal connection exists. [Emphasis added.]

We focus on the emphasized phrase "medical probability by expert medical testimony." May an osteopathic physician licensed under NMSA 1978, Sections 61-10-1 to -21 (Repl.1986) qualify to give expert medical testimony as to causation under Section 52-1-28(B)? In answering that question in the affirmative, we address here only the statutory language, that is, whether osteopaths, as a profession, are by definition qualified to give causation testimony. We are not concerned with the individual qualifications of an osteopath since that is a matter to be determined by the trial court. *See Sturgeon v. Clark*, 69 N.M. 132, 364 P.2d 757 (1961).

In holding that psychologists did not qualify under Section 52-1-28(B), *Fierro* relied primarily on the provisions of the Professional Psychologist Act, NMSA 1978, Sections 61-9-1 to -18 (Repl.1986), and specifically Section 61-9-17 thereof which prohibits psychologists from engaging in the practice of medicine as defined by the laws of this state. In *Fierro*, to demonstrate that the practice of medicine did not include psychology, we cited to NMSA 1978, Section 61-6-15 (Repl.1986) which defines the "practice of medicine." Instead of comparing that definition with the definition of the "practice of psychology" as found in Section 61-9-3(D), we took a shortcut and simply noted that the legislation covering medicine and surgery as contained in NMSA 1978, Sections 61-6-1 to -28 (Repl.1986) did not apply to or affect the practice of psychology. § 61-6-16(F)(6). The problem caused by that reference, as applied to this case, comes about because the same section says Sections 61-6-1 to -28 shall not apply to or affect the practice of osteopathy. § 61-6-16(F)(1).

No doubt the trial court in the case before us saw no reason to make any distinction between the practice of osteopathy and the practice of psychology since both are excluded from the provisions of the act governing medicine and surgery under Section 61–6–16(F)(1) and (6). Defendants forcefully argue for that distinction on appeal. By taking the shortcut and relying in part on Section 61–6–16(F), the rationale in *Fierro* broke down. We take this opportunity to fix it.

Had we compared the definition of "practice of medicine" as defined in Section 61–6–15 with the definition of the "practice of psychology" under Section 61–9–3(D) in light of the plain language of Section 52–1–28(B), we would have determined that "expert medical testimony" does not include psychologists. When a statute is free from ambiguity, there is no room for construction and it is to be given effect as written. *Grauerholtz v. New Mexico Labor & Industrial Commission*, 104 N.M. 674, 726 P.2d 351 (1986). Also, absent clearly expressed legislative intent requiring otherwise, words or phrases in a statute will be given their usual, ordinary meaning. *Tafoya v. New Mexico State Police Board*, 81 N.M. 710, 472 P.2d 973 (1970). Thus, we reached the correct result in *Fierro*.

We note, however, that Section 61–6–16(F) excepts the listed professions from the general licensing requirements of Article 6 (medicine and surgery). Chapter 61 provides separate licensing requirements for the listed professions. These professions are not necessarily excluded from the practice of medicine; rather, we must look to the specific definition of each profession to determine if it involves the practice of medicine.

Applying the same approach here, we reach a different result. Again, Section 61–6–15 defines the practice of medicine. Section 61–10–14, dealing with the privileges of osteopathic physicians and surgeons, provides in part:

Osteopathic physicians and surgeons licensed hereunder shall have equal rights, privileges and obligations in the handling of cases and rendering of medical services in all branches and phases of the healing arts as are accorded or permitted physicians and surgeons of other schools of practice; that such general rights shall extend to the rendering of medical services under the provisions of public health, welfare, assistance laws and other fields of public medicine, and no regulations shall be made with respect thereto limiting, excluding or discriminating against osteopathic physicians and surgeons.

When those provisions are compared, we see no basis for excluding osteopaths, as a profession, from giving expert medical testimony under Section 52–1–28(B).

Defendants attempt to make distinctions in education and training between medical physicians and surgeons and osteopathic physicians and surgeons, referring us to *Munroe v. Wall*, 66 N.M. 15, 340 P.2d 1069 (1959), which upheld a declaratory judgment that the governing board of a public hospital did not have to afford osteopathic physicians and surgeons the same treatment as is given to doctors of medicine. We are not concerned here with distinctions between the professions. We are only concerned with the question of whether, by statutory construction, an osteopath qualifies to give expert medical testimony. We hold osteopathic physicians and surgeons may give expert medical testimony under Section 52–1–28(B).

Plaintiff raised two additional issues. Commendably, both have been resolved which allows us to focus on the true controversy. One issue challenged the trial court's findings which plaintiff interpreted to exclude her expert's testimony on the language used in expressing his opinions as well as his lack of qualifications to testify as a medical expert. Although it is not clear that the trial court excluded the testimony on any ground other than qualifications, defendants concede, and we agree,

that it is not the choice of words that is at issue; rather, it is whether an osteopathic physician qualifies as an "appropriate speaker." We hold he does.

Finally, plaintiff challenged the disallowance of medical expenses, claiming that failure to prove disability would not necessarily require disallowance of otherwise legitimate medical bills. Without admitting liability, defendants paid these expenses after the brief-in-chief had been filed.

We reverse and remand with directions to complete the trial of this case in accordance with this opinion.

IT IS SO ORDERED.

GARCIA and FRUMAN, JJ., concur.