818 P.2d 869

**Robert L. GAMBREL, Deceased, and Maxine Gambrel, his Widow, Claimant–Appellee,**

**v.**

**MARRIOTT HOTEL and Argonaut Insurance Company, Respondents–Third–Party Claimants/Appellants–Cross–Appellees,**

**v.**

**Fabian CHAVEZ, Superintendent of Insurance of the State of New Mexico, and the New Mexico Subsequent Injury Fund, Third–Party Respondents/Cross–Appellants.**

No. 12619.

Court of Appeals of New Mexico.

Aug. 15, 1991.

Bivins, J., dissented and filed opinion.

James R. Beam, Albuquerque, for claimant-appellee.

Kelly A. Genova, Sager, Curran, Sturges and Tepper, P.C., Albuquerque, for respondents-third party claimants/appellants-cross appellees.

Barry Paisner, Hinkle, Cox, Eaton, Coffield, and Hensley, Santa Fe, for third party respondents/cross appellants.

## OPINION

CHAVEZ, Judge.

Marriott Hotel and its insurance company (hereinafter collectively referred to as "employer") appeals from that portion of the workers' compensation judge's (WCJ) compensation order awarding death benefits to worker's widow. Employer raises a single issue on appeal: whether the two-year time limit for bringing claims for death benefits under NMSA 1978, Section 52-1-46 (Cum.Supp.1986) (Interim Act), begins to accrue from the date of the accident or from the date the worker knew or should have known of a compensable injury. State of New Mexico Superintendent of Insurance and the Subsequent Injury Fund (Fund) also appeals, arguing (1) employer failed to substantially comply with the Subsequent Injury Act (SIA); (2) the apportioned liability between the employer and the Fund is not supported by substantial evidence; and (3) the purpose and policy of SIA is violated by assessing liability against the Fund in this case. We deny employer's motion to strike worker's answer brief as nonresponsive. For reasons stated below, we affirm the award of death benefits but reverse the compensation order insofar as it holds the Fund liable. We also grant widow's request for attorney's fees for this appeal.

FACTS

On March 5, 1987, while working as a carpenter, worker was assigned the task of stripping chairs in a small, unventilated room. At this time, employer was aware that worker suffered from a preexisting physical impairment to his lungs due to chronic obstructive pulmonary disease. Worker subsequently filed a workers' compensation claim against employer, and was awarded permanent total disability benefits

in a March 23, 1988, compensation order. This compensation order also found (1) that exposure to the stripping chemicals was the direct and proximate cause of his disability and (2) that worker knew or should have known that he suffered a compensable injury on August 17, 1987. We affirmed the order by memorandum opinion. (Ct.App. No. 10, 599, filed April 18, 1989). Worker died on April 30, 1989, of acute pulmonary embolus with pulmonary infarction.

Widow filed a claim for death benefits on December 1, 1989. Employer had previously filed a third-party complaint against the Fund and had filed a certificate of preexisting physical impairment on October 10, 1989. The certificate was not signed, however, by either worker or widow. A compensation order was entered on August 13, 1990, awarding death benefits to worker's widow and apportioning liability equally between employer and the Fund.

DISCUSSION

I. Employer's Appeal

Employer claims that, as a matter of law, widow is not entitled to the award of death benefits and funeral expenses under Section 52–1–46 because of the time bar contained therein. The question presented for review is whether the two-year period within which the claim must be brought begins to run from the date of the accidental injury rather than the date worker knew or should have known he had a compensable injury.

> Section 52–1–46 states, in relevant part: Subject to the limitation of compensation payable under Subsection G of this section, if an accidental injury sustained by a workman proximately results in his death within the period of two years following his accidental injury, compensation shall be paid in the amount and to the persons entitled thereto, as follows * * *.

■ We begin by noting that the proper construction of this statutory provision requires that we determine legislative intent. *See Security Escrow Corp. v. State Taxation and Revenue Dep't*, 107 N.M.

540, 760 P.2d 1306 (Ct.App.1988) (central concern of reviewing court is to determine legislative intent). Legislative intent is primarily ascertained by reference to the plain language set forth in the statute. *See General Motors v. Anaya*, 103 N.M. 72, 703 P.2d 169 (1985) (plain language of statute is primary means of ascertaining legislative intent). The common referent is the "plain meaning" rule of statutory construction. However, it should be noted that the "plain meaning" rule is but a guideline to assist the court in correctly ascertaining the intent of the legislature. *See Quintana v. New Mexico Dep't of Corrections*, 100 N.M. 224, 668 P.2d 1101 (1983) (purpose of rules of statutory construction is to derive legislative intent); *see also Martinez v. Research Park, Inc.*, 75 N.M. 672, 410 P.2d 200 (1965) (intention of legislature prevails over mechanistic reading of literal language).

■ What then is the intent of the legislature? We have repeatedly said that the purpose of the Act is to provide a form of recovery for a worker and his dependent heirs, and to ensure prompt compensation to worker and his dependents. *See Livingston v. Loffland Bros.*, 86 N.M. 375, 378, 524 P.2d 991, 994 (Ct.App.1974); *see also Aranda v. Mississippi Chemical Corp.*, 93 N.M. 412, 416, 600 P.2d 1202, 1204 (Ct.App. 1979) (public policy demands, and primary purpose of statute confirms, at minimum, that worker and family have threshold amount of financial security); *see also* Larson, *Workmen's Compensation* (Desk Ed.) § 1.1 (in death cases, benefits to dependents provided), § 2.40 (injuries affecting earning power compensated), § 2.50 (purpose of benefits to avoid dependence on others), § 2.60 (if worker dies without dependents no award made because no threat of destitution on behalf of dependents). While additional policy may be adduced in order to guide the court in particular cases, we believe the broad policy contours underlying the Act are identical whether worker is disabled or dies as a result of the accidental injury. But see *Desselle v. Liberty Mutual Ins. Comp*, 482 So.2d 1009 (La. App. 3 Cir.1986) (in workers' compensation cases, "Conflicting claims of morality and

intelligence are raised by opponents and proponents of almost every measure * * *.").

We are mindful that death benefits constitute a separate cause of action, not derivative of the action worker could have maintained for compensation had he survived. *See* A. Larson, 2A *The Law of Workmens' Compensation,* § 64.10–11. However, as the above cases demonstrate, it is the strong public policy underlying the Act that the protection of dependents is equal in measure to the protection of worker's interests. Employer contends that "accidental injury", as appearing is Section 52–1–46 refers solely to the date of the accident which caused the injury. Employer's position is that the use of the term, "accidental injury", in the controlling section requires this court find a fixed date, upon which "the accident" from which the injury arose, occurred. This date then sets the two year period running and a simple time line controls. We disagree.

■ We first approach this matter by analyzing the cases wherein the component words of the term in issue have been construed. Our cases consistently hold that an "injury" need not arise immediately, momentarily, or obviously at the time of the "accident" to be compensable under our Act. *See Candelaria v. Gen. Elec. Co.,* 105 N.M. 167, 172, 730 P.2d 470 (Ct. App.1985) (injury may be produced gradually and progressively); *Cisneros v. Molycorp. Inc.,* 107 N.M. 788, 765 P.2d 761 (Ct.App.1988). This is not to say that time, place and cause of injury need not be established by the claimant. *See Herndon v. Albuquerque Pub. Schools,* 92 N.M. 635, 593 P.2d 470 (Ct.App.1978).

■ We conclude that neither an "accident" taking months or years to happen, nor an "injury" taking months or years to manifest itself, is an impermissible predicate for a valid compensation claim under our legislature's use of the term "accidental injury." *See* Larson, §§ 37.20, 78.42. The guidance of these authorities and cases is that the terms appearing in the statutes shall be construed so as to reach fair and consistent conclusions.

Such fairness and consistency is particularly significant where a statute of limitations is raised as a defense. *See Gaston v. Hartzell,* 89 N.M. 217, 549 P.2d 632 (1976) (statute of limitations is procedural not substantive; law favors action over limitation); *see also* Larson, § 78.42(b) (logic generally underlying statutes of limitations, that seasonable assertion of right is required, is often misplaced in a beneficent piece of social legislation where no amount of vigilance is of any help, such as with latent injuries); Larson, § 2.50 (compensation permits recipient to avoid becoming burden on others and evidence establishes workers' compensation does not usually go beyond that which is necessary to keep worker from destitution).

■ Thus the purposes for which statutes of limitations were enacted generally, to preclude stale litigation and bar remedy to those having been "sleeping on their rights," should be carefully invoked where the prescription is one contained in remedial social legislation. This is so because the result of cutting off compensation merely brings about the harm the beneficent piece of legislation was designed to prevent, namely to prevent the injured worker or his dependents from becoming dependent on state welfare.

■ We turn now to caselaw more directly on point. As to the proper construction of "accidental injury," and whether a time bar precludes compensation benefits from accruing to a living, but injured employee, the case of *Casias v. Zia Co.,* 93 N.M. 78, 596 P.2d 521 (Ct.App.1979) is controlling. The *Casias* court said:

We, therefore, apply the meaning "date when the compensable injury manifests itself" or "date when the workman knows or should know he has suffered a compensable injury" to all of the portions of the Workmen's Compensation Act where the terms "time of accident," "time of injury," "date of disability," "date of accidental injury," or words of similar import, are used, * * *

Today we extend the *Casias* logic to injuries resulting in death, and thus to the

"accidental injury" language contained in Section 52–1–46.

As noted above, death benefits constitute a separate cause of action and are not derivative of the cause the employee could have maintained had he survived. Because of this, it is not surprising that the dictum supporting the *Casias* holding notes but does not emphasize the policy upon which we rely today. Dictum in *Casias* notes strong public policy stands against rendering victims of accidental employment injuries dependent on state welfare programs. Nothing said in *Casias* would support the contention that this policy does not extend to beneficiaries and dependent heirs of an employee having died as a result of an employment related injury. This beneficent legislation should not be construed by this court to find policy supportive of compensation for an injured employee but unsupportive of compensation for his dependent widow. Such is not the intent of our legislature.

Our ruling is consistent with the application of the *Casias* rule to other provisions of the Act that do not address a worker's claim for personal benefits. *See, e.g., Hernandez v. Levi Strauss, Inc.,* 107 N.M. 644, 763 P.2d 78 (Ct.App.1988) (application of the rule to pre–1988 claims brought by employers against the Subsequent Injury Fund). In the present case, it was determined that worker knew or should have known that he suffered a compensable injury on August 17, 1987. Thus August 17, 1987 is the date of his accidental injury. Worker died on April 30, 1989, within two years of his accidental injury. The WCJ therefore properly awarded death benefits.

II. Fund's Appeal

The Fund raises three issues challenging its liability under these facts. We need not address two of these issues because we view the issue concerning the certificate of preexisting impairment as dispositive.

The Fund argues that employer failed to substantially comply with SIA. Specifically, the Fund contends that an employer does not substantially comply with NMSA 1978, Section 52–2–6 (Cum.Supp.1986) (Interim Act), where it fails to seek a worker's signature for a substantial amount of time after the accident. We agree.

The relevant portion of Section 52–2–6 states that a certificate of preexisting condition,

(B) * * * shall be signed and acknowledged by the workman and a physician duly licensed to practice medicine * * *.

(D) In the event the certificate of preexisting physical impairment certifies that the impairment exists, the Subsequent Injury Act shall be applicable to any disability arising out of an accident or occurrence taking place after the date a certificate is executed.

The filing of the certificate is a procedural prerequisite to recovery from the Fund. *City of Roswell v. Chavez,* 108 N.M. 608, 775 P.2d 1325 (Ct.App.1989). However, an employer may file the certificate after the subsequent injury where the employer had prior actual knowledge of the preexisting impairment. *Fierro v. Stanley's Hardware,* 104 N.M. 50, 716 P.2d 241 (1986); *but cf.* NMSA 1978, § 52–2–6 (Cum. Supp.1988) (SIA applies only to injuries which occur after the filing of the certificate). Moreover, the technical requirements of Section 52–2–6 will be met where the certificate "substantially complies" with the purposes of SIA. *Rader v. Don J. Cummings Co., Inc.,* 109 N.M. 219, 784 P.2d 38 (Ct.App.1989). These purposes include hiring and retaining impaired and injured workers and documenting the nature and extent of their impairment. *Id.; Vaughn v. United Nuclear Corp.,* 98 N.M. 481, 650 P.2d 3 (Ct.App.1982).

In *Rader,* we held that the purposes of SIA were satisfied where the employer had knowledge of the preexisting impairment and filed an unsigned certificate accompanied with an explanation that worker refused to sign it. *Id.* 109 N.M. at 222–23, 784 P.2d at 41–42. Here, there is no dispute that employer knew of worker's preexisting impairment before the subsequent injury. Instead, the Fund seeks to distinguish *Rader* by relying on employer's failure to even attempt to obtain worker's

signature while he was alive. Employer counters by arguing that the two basic purposes of the act, documentation and retention, have been fulfilled. As we noted in *Rader*, "the purpose of documenting the impairment is minimally served, if at all, where the employer and the worker wait until long after the subsequent injury to document the preexisting impairment." *Id.* at 222, 784 P.2d at 41.

Under the facts of this case, we conclude that employer failed to substantially comply with the purposes of SIA. Worker filed a claim for workers' compensation benefits against employer on August 27, 1987. Employer filed a petition for a claim against the Fund on January 21, 1988, but did not file a certificate of preexisting impairment until early October 1989. Apparently, employer never sought worker's signature during the twenty months that worker was alive after he filed his claim against the employer. Employer offers no explanation for the failure to obtain worker's signature, other than to analogize the facts to *Rader* by asserting that worker's death precluded it from fully complying with the filing requirements. However, we do not view employer's inaction while worker was alive as constituting "substantial compliance" with the purposes of SIA. When we apply "substantial compliance" analysis to mandatory statutory language, we are aware that "there is a point beyond which the mandatory provisions of the [Workers' Compensation] Act cannot be ignored. If the mandatory provisions are disregarded altogether it is clear that the intention of the Legislature would be totally frustrated." *Security Trust v. Smith,* 93 N.M. 35, 38, 596 P.2d 248, 251 (1979). In this case, employer's failure to act went beyond the limits of both the language of SIA and the underlying purposes.

## III. Attorney's Fees

 Pursuant to our authority under NMSA 1978, Section 52–1–54(E) (Cum. Supp.1986), we hereby order employer to pay widow $2000 dollars for this appeal.

## CONCLUSION

Claimant also argues that Section 52–1–46 is unconstitutional in that it violates the equal protection clause of the fourteenth amendment to the United States Constitution. However, we need not decide this issue because it is not necessary to the disposition of this case. *In re Bunnell,* 100 N.M. 242, 668 P.2d 1119 (Ct.App.1983) (Court will not decide constitutional question unless necessary to the disposition of the case). For the reasons stated above, we affirm the award of death benefits and reverse the compensation order insofar as it apportions liability to the Subsequent Injury Fund.

IT IS SO ORDERED.

ALARID, C.J., concurs.

BIVINS, J., dissents.

BIVINS, Judge (dissenting).

The issue presented by employer's appeal requires this court to answer the following legal question: whether worker's widow (claimant) is entitled to an award of widow's benefits and funeral expenses under NMSA 1978, Section 52–1–46 (Cum.Supp. 1986) when worker's death did not occur within two years of the date of his accidental injury. Claimant also argues, in the event her claim is time barred, that the Workers' Compensation Act (Act) violates due process and equal protection guarantees of the United States and New Mexico Constitutions. Because I interpret the statute to preclude an award of death benefits under these circumstances, I respectfully dissent. Because of the majority's holding, it is unnecessary to dispose of the constitutional issue; nonetheless, after interpreting the statute, I briefly address my concerns regarding the constitutional issue.

*Interpretation of Section 52–1–46.*

Section 52–1–46 provides in pertinent part:

Subject to the limitation of compensation payable under Subsection G of this section, if an *accidental injury* sustained by a workman proximately results in his death within the period of two

years following his *accidental injury,* compensation shall be paid in the amount and to the persons entitled thereto, as follows: * * *. [Emphasis added.]

It is undisputed that worker suffered his accidental injury on March 5, 1987, and became permanently and totally disabled at that time; that he knew or should have known that he suffered a compensable injury on August 17, 1987; and that he died on April 30, 1989. If the two-year time limitation under Section 52–1–46 commences on the date of the accidental injury of March 5, 1987, then more than two years expired between that date and the time of death, and claimant is entitled to no benefits. If the time limitation commences on the date that worker knew or should have known that he suffered a compensable injury, which employer concedes occurred on August 17, 1987, then worker's death occurred within two years and claimant would be entitled to benefits under the statute. Thus, the narrow legal question presented is when does the time bar under Section 52–1–46 commence to run.

Relying on *Casias v. Zia Co.,* 93 N.M. 78, 596 P.2d 521 (Ct.App.1979), the majority holds that the term "accidental injury" as used in Section 52–1–46 refers not to the date of the accidental injury but rather to the date worker knew or should have known of a compensable injury. I would hold that the language of Section 52–1–46 is clear and unambiguous and requires no interpretation. *See, e.g., State v. Jonathan M.,* 109 N.M. 789, 791 P.2d 64 (1990); *Kern By & Through Kern v. St. Joseph Hosp., Inc.,* 102 N.M. 452, 697 P.2d 135 (1985). Therefore, applying the plain meaning of the term "accidental injury," more than two years expired and claimant is entitled to no benefits.

Reliance on *Casias* is doubtful at best. The majority attributes to this court the following holding from that case:

We, therefore, apply the meaning ... "date when the workman knows or should know he has suffered a compen-

sable injury" to all of the portions of the Workmen's Compensation Act where the terms "time of accident," "time of injury," "date of disability," "date of accidental injury," or words of similar import, are used[.]

*Id.,* 93 N.M. at 81, 596 P.2d at 524.

First, it should be noted that the two participants in *Casias* concurred only in the result. Judge Hendley, in his separate opinion concurring in the result, agreed only with the portion of the author's opinion holding, as limited to the facts presented, that the date the average weekly wages is computed is the date when the compensable injury manifests itself. I do not read that special concurrence as necessarily agreeing with the sweeping language quoted above. Judge Sutin, the other participant, also wrote separately and in more detail. Reasoning that a worker is not entitled to compensation for the mere happening of an accident, Judge Sutin chose to hold that the employer shall begin to pay the worker his average weekly rate from the day of disability. Judge Sutin's reasoning likewise does not suggest concurrence in the broad sweep of the quoted language relied on by the majority.

Second, to the extent that *Casias* attempts to interpret "date when the workman knows or should know he had suffered a compensable injury" to apply to all portions of the Act, it is nothing more than dictum. The issue in that case required a determination as to when the fact-finder should calculate the rate of compensation under NMSA 1978, Section 52–1–20; *i.e.,* on the date the accident occurred or on the date the worker became permanently and totally disabled. Calculations in that case made a difference because, between the date of the accident and the date of disability, the rate increased from seventy-eight to eighty-nine percent. *Casias* did not deal with Section 52–1–46 or any other provisions of the Act and, therefore, its holding can only be relied upon as authority with respect to the issue resolved and no more.[1]

---

1. It is interesting that the supreme court, in *Eberline Instrument Corp. v. Felix,* 103 N.M. 422, 708 P.2d 334 (1985), treated "at the time of the

accident" in Section 52–1–20 as being the date of the accidental injury; however, there is no indi-

Third, the majority places emphasis on the purposes underlying the *Casias* interpretation that the date when worker knows or should know he had suffered a compensable injury applies to the date of the accidental injury. Those purposes are, generally, to discourage workers from prematurely filing claims; to prevent unfair wage calculations due to the effects of inflation; and to prevent workers from becoming dependent on the welfare program of the state. Even if it could be said that Section 52–1–46 requires interpretation as to the meaning of the phrase "accidental injury," a dependent's right to death benefits "is a separate cause of action, independent of and not derivative from the right of the deceased employee." *Kujawa v. Latrobe Brewing Co.*, 454 Pa. 165, 167, 312 A.2d 411, 413 (1973); *see also* 2A A. Larson, *The Law of Workmen's Compensation* § 64.11 at 11–193 to –194 (1990). Consequently, while recognizing that the overall Act represents a compromise in allocating burdens, *see Kujawa v. Latrobe Brewing Co.*, I see little or no utility in trying to apply the underlying purposes in *Casias* to this provision of the Act. The majority seems to recognize this lack of utility to a certain extent; nevertheless, they emphasize that the overriding concern in *Casias* is to prevent a worker from being penalized for suffering a late injury and becoming dependent on the welfare program of the state. They extend that concern to the worker's dependents when the injury results in death.

I believe that the majority misunderstands the purpose of that part of Section 52–1–46 that is before us. It would appear that the legislature set a specific time limit beyond which benefits would not be paid to the dependents of an injured worker even if it could be proven that the death proximately resulted from the accidental injury sustained. *See Desselle v. Liberty Mut. Ins. Co.*, 482 So.2d 1009 (La.Ct.App.1986) (compromise goal of worker's compensation act furthered by setting time limit

after injury as condition precedent to right of dependents to seek recovery of death benefits under act); *Guy v. Southwest Alabama Council on Alcoholism*, 495 So.2d 77 (Ala.Civ.App.1986) (same); *see also Beal v. Southern Union Gas Co.*, 62 N.M. 38, 304 P.2d 566 (1956). Such a time limit would serve to eliminate complex questions as to whether and to what extent extraneous causes figured into the death. No doubt actuarial considerations also enter into the rationale for this time bar. The legislature could be concerned with the actuarial soundness and financial stability of the Act. Limiting benefits to the dependents of an injured worker who dies provides but one means of assuring affordability of this program as well as its fiscal soundness.[2] To be sure, the result of cutting off a worker's widow is harsh. *See Booker v. Duke Medical Center*, 297 N.C. 458, 256 S.E.2d 189 (1979) (such statutes sometimes engender harsh results). Our supreme court has recognized that harshness in *Vukovich v. St. Louis, Rocky Mountain & Pac. Co.*, 40 N.M. 374, 60 P.2d 356 (1936), in discussing the provision before us today. In that case, the court stated:

> It is true, as counsel suggest[s], that a case of individual hardship may arise upon which the statute will operate with peculiar harshness, as where death occurs within an hour or a day of the limitation period. *Although, as defendant's counsel suggest[s], the victims of such situation in reality suffer no greater misfortune than dependents of him who dies but shortly after expiration of one year from date of injury when admittedly compensation is not recoverable.* [Emphasis added and citations omitted.]

*Id.* at 378–79, 60 P.2d at 358.

Paraphrasing that quote, the harshness applies even under the majority's holding. A worker could die within one hour or a day after the expiration of two years from the date worker knows or should know that

---

cation that worker's disability occurred at any later date.

**2.** I leave the issue of the constitutionality of Section 52–1–46 to be discussed later in this opinion.

he had suffered a compensable injury. I would agree that with respect to this case, and any other case in which the date of disability becomes known but does not coincide with the date of accidental injury, the two-year time bar may be pushed forward; nevertheless, even with that expansive interpretation, some dependents will necessarily be foreclosed from recovering benefits.

The fundamental rule in construing or interpreting a statute is that appellate courts ascertain and give effect to legislative intent. *See New Mexico State Highway Comm'n v. Ferguson*, 98 N.M. 680, 652 P.2d 230 (1982); *Gonzales v. Oil, Chem. & Atomic Workers Int'l Union*, 77 N.M. 61, 419 P.2d 257 (1966) (statute is to be read and given effect as written; words used in the statute ought to be given their ordinary and usual meaning unless a different intent is clearly indicated). In reading Section 52–1–46, it is impossible for me to glean any meaning from the term "accidental injury" other than the date of the "accidental injury." Had the legislature intended some different date, such as the date when the worker knew or should have known that he suffered a disability, it could have easily said so. *Compare Booker v. Duke Medical Center*, 297 N.C. at 473, 256 S.E.2d at 204 (where statute allowed recovery "if death results approximately from the accident and within two years thereafter, or while total disability still continues").

Moreover, the statute before us today is different from other provisions of the Act in which appellate courts for the most part have applied a "knew or should have known" standard. In most cases where that standard has been applied, some action has been required on the part of the worker in order to obtain benefits. For example, under the time bar of NMSA 1978, Section 52–1–31, the worker must give notice of and file his claim within the prescribed time. We have consistently held that such actions on the part of the worker should not be required to commence before the worker has reason to know he has a compensable claim. *See, e.g., Gomez v.*

*Hausman Corp.*, 83 N.M. 400, 492 P.2d 1263 (Ct.App.1971).

The rationale for those holdings is based not only on common sense but on fairness. It would not only be unreasonable but unfair to require someone to take an action before they know they have any obligation to do so. That same rationale does not apply to Section 52–1–46, which is a separate cause of action. *See Kujawa v. Latrobe Brewing Co.* Under Section 52–1–46, no action is required of either of the worker or of his dependents. Whether the worker knows or has reason to know that he had suffered a compensatory injury is simply not relevant. The legislature has chosen to place a time limitation that has a clear beginning date and a clear ending date. Those who fall within the two-year time limitation may recover; those who do not, may not. *See, e.g., Scharwenka v. Cryogenics Management, Inc.*, 163 N.J.Super. 16, 394 A.2d 137 (App.Div.1978); *Desselle v. Liberty Mut. Ins. Co.*

I will now address briefly the arguments advanced by claimant as to why the date of the "accidental injury" should not be the date worker suffered his accidental injury. Claimant devotes a considerable portion of her brief to arguing that this is a fact question. She misunderstands employer's position. Employer does not question the date of August 17, 1987, as being the date that worker knew or should have known he had a compensable claim. Employer merely disputes the legal effect of using that date in lieu of the date of the accidental injury.

Similarly, claimant's argument raising collateral estoppel is misplaced. She claims that the issue before this court was resolved in a previous appeal of this case. That is incorrect. The prior appeal involved worker's claim for benefits while he was alive. The current appeal involves a claim for death benefits which could only occur after worker died. *See Kujawa v. Latrobe Brewing Co.* Section 52–1–46 was not before this court in the prior appeal.

*Constitutionality of Section 52–1–46.*

Claimant raises the issue of the unconstitutionality of the Act in her answer brief

rather than filing a cross-appeal. *See* SCRA 1986, 12–201(C). If this court had found her claim time barred, claimant's failure to raise this issue below would not have been fatal. *See Montez v. J & B Radiator, Inc.,* 108 N.M. 752, 779 P.2d 129 (Ct.App.1989) (as administrative agency does not have authority to determine constitutionality of a statutory enactment, issue can be first raised on appeal).

Claimant's specific argument is that the Act, by its exclusive remedy provisions, limits her right of access to the courts solely to Section 52–1–46. She contends that Section 52–1–46 violates equal protection guarantees by creating two classes of surviving dependents: the dependents of a worker who died within two years following the date of the worker's accidental injury, and the dependents of a worker who died beyond the period of two years following the date of the worker's accidental injury. Dependents falling into the first classification, *i.e.,* where the worker dies within two years of his accidental injury, are provided the right to obtain minimal financial security through the Act. Dependents falling into the second classification, *i.e.,* where the worker lives for a period in excess of two years following his date of accidental injury and then dies as a result of the injury, are denied all rights to obtain minimal financial security.

This court has previously upheld, under the rational basis test, the constitutionality of certain of the exclusive remedy provisions of the Act. *See Sanchez v. M.M. Sundt Constr. Co.,* 103 N.M. 294, 706 P.2d 158 (Ct.App.1985) (remedy provisions for nondependent survivors, which classified nondependent survivors of workers differently than survivors of tort victims fatally injured outside the Act, were rationally related to Act's purposes so as to survive equal protection guarantees); *Casillas v. S.W.I.G.,* 96 N.M. 84, 628 P.2d 329 (Ct.App. 1981) (amount of disability benefits provided by the Act had reasonable relation to economic purpose of Act); *cf. Montez v. J & B Radiator, Inc.* (court did not determine whether Act could survive scrutiny, as Act did not create two separate classifications subject to different treatment).

This court has also upheld, under rational basis review, equal protection challenges to the medical malpractice limitation period. *See Kern By & Through Kern v. St. Joseph Hosp.; Armijo v. Tandysh,* 98 N.M. 181, 646 P.2d 1245 (Ct.App.1981).

Employer, citing *Casillas v. S.W.I.G.* and cases from other jurisdictions, argues that this court should apply the rational basis test to hold Section 52–1–46 constitutional. Claimant contends that the particular class affected, dependent survivors of injured workers who fall within the provisions of the Act and die more than two years after the accident, warrant a heightened standard of review. *See Richardson v. Carnegie Library Restaurant, Inc.,* 107 N.M. 688, 763 P.2d 1153 (1988) (applying heightened scrutiny, determined that damage cap on liability of dramshop owners violated equal protection clause); *Trujillo v. City of Albuquerque,* 110 N.M. 621, 798 P.2d 571 (1990) (applied heightened scrutiny to damage cap on City's liability under Tort Claims Act to determine whether it violated equal protection; remanded for fact-finding). Notably, *Casillas v. S.W.I.G.* and other New Mexico cases upholding the constitutionality of statutes pursuant to equal protection challenges were decided before *Richardson,* which first applied heightened scrutiny to invalidate a statutory enactment under the New Mexico Constitution.

*Richardson* and *Trujillo* arguably support applying heightened scrutiny to Section 52–1–46. However, if the statute is unconstitutional under the rational basis test, then it would be unnecessary to review it under heightened scrutiny.

Arguably, this court could find the statute unconstitutional under the rational basis test. That test requires the proponent of the unconstitutionality of a statute to show "that the law at issue treats like-situated persons unequally on the basis of a classification scheme unrelated to some real distinction, or that the legislation lacks a reasonable relationship to a legitimate government purpose." *Trujillo* at 628, 798 P.2d at 578 (citing *Richardson*). Applying that test, other jurisdictions have found provisions of workers' compensation stat-

utes unconstitutional. *See Kinney v. Kaiser Aluminum & Chem. Corp.*, 41 Ohio St.2d 120, 322 N.E.2d 880 (1975) (section of workers' compensation statute, part of which established conclusive presumption by precluding recovery for death benefits if worker did not die within three years of injury, held violative of equal protection); *Caruso v. Aluminum Co. of Am.*, 15 Ohio St.3d 306, 473 N.E.2d 818 (1984) (where state of medical knowledge changed since enactment of statutory provision, section of workers' compensation act precluding recovery to dependents of worker whose death occurred more than eight years after exposure to silicosis violated equal protection); *Fleischman v. Flowers*, 25 Ohio St.2d 131, 267 N.E.2d 318 (1971) (where prerequisite to recovery under section of workers' compensation act required, inter alia, that worker have been absent from employment at least eight days, and worker had been absent only three days, but there was no question as to the causal relationship, court struck down act as in conflict with equal protection requirements); *State ex rel. Nyitray v. Industrial Comm'n of Ohio*, 2 Ohio St.3d 173, 443 N.E.2d 962 (1983) (section of workers' compensation statute, not intended to penalize dependents where compensation due, violated equal protection); *Roberts v. Merrill*, 386 P.2d 780 (Okla.1963) (provision of workers' compensation act unconstitutional). Using analogous rationale, this court could find Section 52–1–46 unconstitutional. *See also Sanchez v. M.M. Sundt Constr. Co.* (purpose of Act is to keep worker and family minimally financially secure); 2B A. Larson, *The Law of Workmen's Compensation* § 78.61, at 15–410 to –411 n. 9 (1989) ("Seriously injured workers in New Mexico should be advised to die quickly lest their families be entirely precluded from receiving death benefits.... [The distinction created by the limitation period is] an obviously absurd distinction with no conceivable reason of policy to support it.").

Although other jurisdictions have upheld the constitutionality of similar workers' compensation statutes, their rationale, as applied to the case at bar, may be distinguishable. For example, the courts in *Guy v. Southwest Alabama Council on Alcoholism* and *Desselle v. Liberty Mut. Ins. Co.*, in upholding the constitutionality of certain workers' compensation provisions, did not address whether the statutes at issue would create arbitrary results and classes of similarly-situated people who were treated differently. Notably, a Louisiana Supreme Court case subsequent to the Louisiana Court of Appeals' decision in *Desselle* held a different portion of the workers' compensation act constitutional using rationale apposite to the statute at bar. *See Parker v. Cappel*, 500 So.2d 771 (La.1987) (portion of workers' compensation act that excluded political sheriff's deputies but included state employee sheriff's deputies held constitutional because it was based upon real differences in functions and funding of the offices); *see also Newton v. McCotter Motors, Inc.*, 475 So.2d 230 (Fla.1985) (statute held constitutional had broad period of recovery for dependents in that statute allowed recovery for dependents of deceased worker where the death resulted within one year of the accident or followed continuous disability and resulted from the accident within five years of the accident).

Likewise, the medical malpractice limitation period is distinguishable from the limitation at bar. The malpractice limitation period applied to all malpractice claims as defined by the Medical Malpractice Act and that act, therefore, did not create different classes of similarly-situated individuals. *Armijo v. Tandysh*, 98 N.M. at 183, 646 P.2d at 1247.

In conclusion, the constitutionality of Section 52–1–46 is questionable even under the rational basis test. However, since this court did not reach the constitutional issue, the proper standard of review must be left to another day.

For the above reasons, I respectfully dissent.